Wachtler, J.
The defendant was indicted for murder and attempted murder after he stabbed two men on a Manhattan street in August of 1969. It appears that at various times throughout 1965, 1966 and 1967 the defendant had been hospitalized for mental illness. Upon arraignment the court ordered that he be examined to determine his mental capacity to stand trial. The psychiatrists reported that the defendant was not mentally incapacitated and the court confirmed the report.
Two years later the case came to trial. At that time the defendant insisted on representing himself and declined the court’s suggestion that he present an insanity defense. He chose instead to establish an alibi, and although the court *353 repeatedly and "strongly urge[d]” him to permit experienced counsel to try the case the defendant conducted his own defense with the assistance of his two assigned attorneys; who were directed to remain at his side throughout the trial. When the trial concluded three weeks later, the jury found the defendant guilty as charged.
Before pronouncing sentence the Trial Justice ordered a new psychiatric examination to determine the defendant’s present mental capacity as well as his mental status at the time of trial. Once again he was examined by two psychiatrists who filed a report concluding that at that time, as well as at the time of trial, the defendant had the capacity "to understand the proceedings against him” and "to assist in his own defense.” (CPL 730.10, subd 1.) After a hearing the report was confirmed. The defendant is now serving two concurrent terms of imprisonment aggregating from 25 years to life.
The record shows that during the course of the trial— particularly during the opening and closing statements — the defendant drifted into irrelevant and nearly incoherent discourses. Nevertheless he maintains, as he did at trial, that he was not mentally incapacitated. Thus on appeal he has prohibited his attorney from raising any issue relating to his sanity. Counsel, professing to honor this instruction, has claimed instead that the record shows that the "defendant has been denied his constitutional right to proper counsel” because he lacked "the capacity or competence to act as attorney pro se. ” The Appellate Division, affirming the conviction, noted that "counsel’s argument has raised the question it was designed to avoid” (44 AD2d 533).
On this appeal defendant’s counsel raises the same issue, and claims that the Appellate Division failed to perceive a distinction between mental capacity to stand trial and competency "to act as attorney pro se.” Properly formulated the question is rather whether, although the defendant’s capacity to stand trial had been established, did he in addition in the circumstances here presented intelligently and voluntarily waive his right to be represented by counsel and thus exercise his right "to act as attorney pro se”? (See Faretta v California, 422 US 806.)
We reject the contention that there are two separate and distinct levels of mental capacity — one to stand trial, another to waive the right to be represented by counsel and to act as *354 one’s own attorney. By such rejection, however, we do not intend to suggest that mental capability of the defendant at the time of waiver is irrelevant. Quite the contrary. As in other instances of waiver, the determination that it was intelligent and voluntary, and thus legally effective, may well turn, even in major part, on the mental capability of the defendant at the time in the circumstances.
The concept that a defendant must have the mental capacity to stand trial, of course, arose at a time when a defendant was not entitled to have counsel assigned. Since it was contemplated that a defendant would be conducting his own defense, it was held that he could not be brought to trial unless he had sufficient mental capacity to understand the proceedings and assist in his own defense; otherwise "how can he make his defense” (4 Blackstone’s Commentaries, p 24; see, also, People v Valentino, 78 Misc 2d 678). In light of this it would be difficult to say that a standard which was designed to determine whether a defendant was capable of defending himself, is inadequate when he chooses to conduct his own defense. From a practical viewpoint it would be even more difficult to formulate a workable, and presumably higher, standard of competency which would not infringe on the defendant’s constitutional right "to appear and defend in person” (NY Const, art I, § 6; People v McIntyre, 36 NY2d 10). Certainly the defendant’s ignorance of the law cannot defeat this right, for as we noted in McIntyre (supra, p 18) this would "render the right to defend pro se an empty one indeed.”
As indicated, the right of a defendant to act as his own attorney must be approached from a different but clearly related point of view, and can only be premised on a prior determination that he has mental capacity to stand trial. This does not mean, either, that the right to act as one’s own attorney is absolute. In McIntyre we indicated that (p 17) "a defendant in a criminal case may invoke the right to defend pro se provided: (1) the request is unequivocal and timely asserted, (2) there has been a knowing and intelligent waiver of the right to counsel, and (3) the defendant has not engaged in conduct which would prevent the fair and orderly exposition of the issues”. (Emphasis added.) In that case there was no question of the defendant’s competence to stand trial since that issue had not been raised. We believe the same standards should apply when, as here, the issue has been resolved by a formal judicial determination. At that stage the only so-called *355 competency question remaining is whether the decision to waive counsel — implicit in the assertion of the right to defend pro se — "has been made competently, intelligently and voluntarily (Johnson v Zerbst, 304 US 458).” (People v McIntyre, supra, p 17.)
Resolution of this issue, as in comparable settings, does not require a further psychiatric examination and yet another formal hearing to determine mental competency to defend pro se, whatever that may mean. Traditional inquiry by the court demonstrating that the defendant "was cognizant of the dangers of waiving counsel” (McIntyre, supra, p 18) and yet did so "competently and intelligently” (Johnson v Zerbst, supra) should suffice. This is the essential inquiry and the appropriate procedure for resolving it.
In Westbrook v Arizona (384 US 150) for instance, the defendant was examined by three psychiatrists after he stated that he wished to defend himself. At the hearing at least one of the psychiatrists was informed of this and was asked whether the defendant "is mentally able to conduct his own defense”. He stated that the defendant had the capacity. The court found the defendant mentally competent to stand trial and the defendant proceeded to try his own case. He was convicted of murder in the first degree and sentenced to death (State v Westbrook, 99 Ariz 30, 37).
The Supreme Court summarily reversed and remanded. Apparently they attached little or no significance to the fact that the competency hearing had been expanded to cover the question of the defendant’s mental capacity to defend himself. They were more concerned about the fact that there was nothing in the record to indicate that the trial court had queried the defendant in accordance with Johnson v Zerbst (supra) to determine whether his waiver of counsel was intelligently made. In a short Per Curiam opinion they stated (Westbrook, supra) : "Although petitioner received a hearing on the issue of his competence to stand trial, there appears to have been no hearing or inquiry into the issue of his competence to waive his constitutional right to the assistance of counsel and proceed, as he did, to conduct his own defense. 'The constitutional right of an accused to be represented by counsel invokes, of itself, the protection of a trial court, in which the accused — whose life or liberty is at stake — is without counsel. This protecting duty imposes the serious and weighty responsibility upon the trial judge of determining *356 whether there is an intelligent and competent waiver by the accused.’ Johnson v Zerbst, 304 US 458, 465; Carnley v Cochran, 369 US 506.”
In the case now before us the trial court fully discharged that responsibility. The defendant was advised on several occasions of the consequences of any decision on his part to act as his own attorney. The trial court carefully examined the defendant to make certain that the defendant comprehended his predicament.
The record demonstrates that the Trial Judge made a searching inquiry to determine whether the defendant’s decision to waive counsel and proceed on his own was made knowingly and intelligently with full awareness of the risks and consequences. This, coupled with the finding that the defendant was mentally competent to stand trial, is sufficient to show that the trial court properly allowed the defendant to represent himself. In our view the Supreme Court’s holding in Westbrook requires no more (cf. People v Gonzalez, 20 NY2d 289).
In sum, both before and after trial, as the result of two separate examinations and hearings, the defendant was found competent to stand trial. After a full and searching inquiry of the defendant the trial court, with full awareness that question had been raised as to the defendant’s capacity to stand trial, also concluded that the defendant made a knowing and intelligent waiver of his right to counsel. Under these circumstances the defendant is bound by his decision and cannot complain of the legal representation he has received at his own hands unless the evidence in the record is insufficient as a matter of law to support the court’s determinations (People v Laudati, 35 NY2d 696; People v Witenski, 15 NY2d, 392; People v Jackson, 32 AD2d 968; cf. People v Cooper, 36 NY2d 876, where we held that the question of the defendant’s legal sanity was "beyond [our] review” although it was "difficult if not impossible to avoid a conclusion that defendant was psychotic).” We have found the evidence to be sufficient and thus can only conclude that if the defendant did not always conduct his defense in the most rational manner it was not because he lacked the capacity to do so (cf. People v Kowalcyzk, 34 NY2d 864).
The order of the Appellate Division should be affirmed.