Daniel SHARP, Petitioner,

v.

Charles SCULLY, Superintendent of Green Haven Correctional Facility, Respondent.

No. 80 Civ. 6323–CLB.

United States District Court, S. D. New York.

March 11, 1981.

Daniel Sharp, pro se.

Richard Cohen, Asst. Dist. Atty., Kings County, for respondent.

## MEMORANDUM AND ORDER

BRIEANT, District Judge.

This petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 was filed by petitioner Daniel E. Sharp on November 6, 1980. The District Attorney of Kings County and/or the Attorney General of the State of New York were ordered by this Court on November 17, 1980 to answer the petition. The District Attorney filed an answer for respondent on December 16, 1980.

Petitioner has exhausted his state remedies, as a result of his direct appeals in the New York State courts, as required by 28 U.S.C. § 2254(b). For the disposition of these appeals, see, *People v. Sharpe* (sic), 72 A.D.2d 572, 420 N.Y.S.2d 736 (2d Dept.), *leave to appeal denied*, 48 N.Y.2d 985, 425 N.Y.S.2d 1042, 401 N.E.2d 429 (1979). In those appeals petitioner raised the same issues which he has raised in this petition.

This Court has been supplied with the brief of petitioner on appeal before the Appellate Division, and will treat that brief as setting forth petitioner's arguments in this case. The District Attorney of Kings County has also filed a brief.

On April 10, 1978, pursuant to a plea bargain, petitioner pleaded guilty to murder in the second degree, robbery in the second degree, and burglary in the second degree. On May 19, 1978 petitioner was sentenced to a term of 15 years in accordance with this plea bargain.

In June 1977 petitioner had been found to be incompetent to proceed to trial. Later, in July and again in October of 1977 petitioner was found to be fit to proceed, whereupon petitioner entered a plea of not guilty and gave notice to the district attorney that he intended to place in issue his sanity at the time of the crimes.

Immediately prior to entering his guilty plea on April 10, 1978, petitioner was exam-ined by two court appointed forensic psychiatrists, Dr. Adolph Goldman and Dr. Richard L. Wiedenbacher. They testified before the trial judge on April 10th that in their opinions the petitioner was fit to proceed because he understood the nature of the charges against him and did not seem to be exhibiting any psychotic symptoms at that time. Before pleading guilty, petitioner's counsel withdrew the plea of not guilty by reason of insanity.

Petitioner contends that his guilty plea was accepted by the trial judge in violation of the United States Constitution for two reasons. First, petitioner argues that the trial judge did not determine petitioner's "specific mental capacity" to waive his rights under the Sixth and Fourteenth Amendments. Second, petitioner argues that the trial judge, in violation of petitioner's rights under those two Amendments, did not establish on the record a factual basis for the guilty plea after petitioner claimed he was innocent of the murder.

Petitioner's first argument is that a determination that a defendant is fit to proceed to trial does not support or represent a simultaneous finding that the defendant, *a fortiori*, has an understanding of the consequences of pleading guilty and thus can knowingly waive important constitutional rights. The Appellate Division panel in this case held that "[a]fter defendant was adjudicated competent to proceed to trial, further inquiry into his mental capacity to plead guilty was unnecessary." 420 N.Y. S.2d at 737, citing *People v. Reason*, 37 N.Y.2d 351, 372 N.Y.S.2d 614, 334 N.E.2d 572 (1975).

Our Court of Appeals has not addressed this issue directly, but has commented upon it as follows in dictum:

"It has been held that competency to plead guilty must be greater than competency to stand trial since the former requires an understanding of constitutional rights. *E. g., Sieling v. Eyman*, 478 F.2d 211 (9th Cir. 1973). This conclusion was based on the holding in *Westbrook v. Arizona*, 384 U.S. 150, 86 S.Ct. 1320, 16

L.Ed.2d 429 (1966) (per curiam), which recognized a distinction between competence to stand trial and competence to waive the right to counsel, the former nor (sic) necessarily guaranteeing the latter. We need not reach this question, however, since the parties have not objected to the use of the New York statutory test of incompetency to stand trial, *see* note 26 *supra*, throughout these proceedings to determine Suggs' competency to plead guilty. Moreover, it may be drawing too fine a line to be susceptible of scientific evaluation. *See* Note, *Competence to Plead Guilty: A New Standard*, 1974 Duke L.J. 149, 170."

*Suggs v. LaVallee*, 570 F.2d 1092, 1118, n. 65 (2d Cir.), *cert. denied* 439 U.S. 915, 99 S.Ct. 290, 58 L.Ed.2d 263 (1978); see also *United States ex rel. Curtis v. Zelker*, 466 F.2d 1092, 1098–99 (2d Cir. 1972), *cert. denied* 410 U.S. 945, 93 S.Ct. 1405, 35 L.Ed.2d 612 (1973).

As noted by the Court in *Suggs*, the Ninth Circuit has held that before a guilty plea may be accepted, a defendant must be found to possess that degree of competency "which enables him to make decisions of very serious import." *Sieling v. Eyman*, 478 F.2d 211, 214–15 (9th Cir. 1973). That court went on to state, however, that since the defendant in *Sieling* was examined by three medical experts within a month before his plea, the trial judge might be able to determine, from the opinions expressed by the doctors, whether or not Sieling was competent to plead guilty as well as to stand trial. *Id.* at 215.

■ This Court believes that the adoption of a different and higher standard of mental competency for pleading guilty than for proceeding to trial would be utter mischief, and would force psychiatrists, and certainly judges, to draw lines that are in fact "too fine" to be determined. Absent a contrary direction by our own Circuit to employ a different standard, I conclude in this case that since petitioner was found competent to proceed to trial on serious charges, he was competent to strike a favorable sentence bargain and plead guilty.

Meaning no disrespect to the learned Ninth Circuit panel in the *Sieling* case, we are struck by the obvious unfairness of any such court-made rule which would hold in effect that there are persons charged with serious crimes who have the mental capacity to go to trial and be convicted, but at the same time lack the mental capacity to enter a plea of guilty. Such an unrealistic conclusion, in the guise of protecting rights, would place a number of unfortunates, situated similarly to petitioner, at a horrible disadvantage.

Most state prosecutions are resolved by plea bargaining, sentence bargaining or both. Petitioner, an experienced recidivist, was facing a possible sentence of twenty-five years to life for a vicious murder, in that he had beaten his victim to death with a hammer, in the course of a robbery at the victim's home. While he had placed his mental capacity at the time of the crime in issue, as the crime statistics soar juries tend to take a dim view of such contentions. Knowing this, he was offered, and permitted to accept, a sentence bargain which limited his sentence to the statutory minimum. It would be cruel to adopt a rule which forces a trial on a person found competent to go to trial but not competent to cop out.

Having made this point, which should seem self-evident, we note the next self-evident point: the trial judge had a particularly onerous responsibility to be certain, before accepting the plea, that petitioner was voluntarily and intelligently waiving his constitutional rights to persist in a non guilty plea, to enjoy a trial by jury with the aid of counsel and compulsory process, and to put the People to their proof beyond a reasonable doubt.

■ After reading the transcript of the plea hearing held before the trial judge, I conclude that petitioner was competent, that he was aware of his rights, and his plea was voluntary.

On the same day that petitioner was found competent to proceed to trial, Doctors Weidenbacher and Goldman, in their

examination of the petitioner, discussed with him his decision to plead guilty, and inquired whether he understood the consequences of entering such a plea.

Upon questioning by the District Attorney, Dr. Goldman testified as follows: [testimony omitted].

Dr. Weidenbacher, upon examination by the District Attorney, and then by the defense counsel, testified as follows: [testimony omitted].

The trial judge also carefully questioned the petitioner to determine whether he understood the terms of the plea bargain, the specific charges against him, and the constitutional rights that he was waiving: [colloquy omitted].

Thus the record shows that the petitioner was competent to plead guilty. He understood and responded reasonably to the questions asked him by the trial judge. In this respect, the instant case differs from *Suggs, supra,* at 1100–02, where *after* accepting a guilty plea the trial judge ordered that the defendant be examined because of his bizarre responses.

The record also shows that the petitioner knowingly and intelligently waived his rights to a trial by jury and to confront witnesses. See *Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1937); *People v. Reason,* 37 N.Y.2d 351, 372 N.Y. S.2d 614, 334 N.E.2d 572 (1975). Although he asserted his innocence of the charge of murder, petitioner was aware of the charges against him, the minimum and maximum sentences applicable to the counts of the indictments, the terms of the plea or sentence bargain, and the constitutional rights he was waiving. He was also aware that his attorney was withdrawing his contention of insanity at the time of the crimes. See generally *North Carolina v. Alford,* 400 U.S. 25, 33–39, 91 S.Ct. 160, 165–168, 27 L.Ed.2d 162 (1970). Thus, the trial judge discharged his obligation to petitioner fully and fairly in the light of all the circumstances affecting the proposed plea bargain.

Petitioner next contends that the trial judge unlawfully accepted his guilty plea because the judge failed to elicit a factual basis for the plea, despite petitioner's assertion that he was innocent of the crime of murder in the second degree. The following colloquy between the trial judge and the petitioner occurred on this point: [colloquy omitted].

In addition, prior to this colloquy, petitioner's counsel, Mr. Moser, had made the following statements on the record in the presence of petitioner: [statements omitted].

In *United States ex rel. Dunn v. Casscles,* 494 F.2d 397, 399–400 (2d Cir. 1974), the Court of Appeals held that the failure of a state judge to establish a factual basis for a guilty plea, coupled with assertions of innocence, is grounds for the issuance of a writ of habeas corpus.

Clearly, the trial judge in the instant case found a factual basis for the plea in the statements by defense counsel that a number of witnesses, including the petitioner's accomplice, one DeLeon, would testify that petitioner had committed the murder.

■ This Court finds that an adequate factual basis for the plea was presented to the trial judge. The judge was not required to conduct a mini-trial, but was entitled to rely on the defense attorney's characterization of the testimony. Petitioner has not asserted that his attorney's advice and counsel was in any way inadequate.

For the foregoing reasons this petition for a writ of habeas corpus is denied on the basis of the state court record. The Clerk shall enter a final judgment. In view of the *Sieling* claim made here, a question of first impression in this Circuit, the Court certifies probable cause for an appeal and authorizes petitioner to appeal *in forma pauperis.*

So Ordered.