OPINION OF THE COURT
Irving Lang, J.
Jack Henry Abbott was convicted of manslaughter in the first degree by jury verdict in New York State Supreme Court on January 21, 1982. The issue before this court is whether the defendant’s previous felony convictions require that he be sentenced as a persistent violent felony offender pursuant to section 70.08 of the Penal Law and CPL 400.16.
The defendant’s first felony conviction occurred in the State of Utah in 1967 where he was convicted of assault of one convict on another by means of a knife. The sentence imposed was 3 to 20 years in prison. The second felony conviction occurred on December 13, 1971, when Abbott pleaded guilty to bank robbery in the United States District Court for the District of Colorado and received a sentence of 19 years in prison. The defendant does not controvert the fact of these convictions, nor that the elements of the crimes would be violent felonies in New York (see People v Olah, 300 NY 96), but claims the convictions were unconstitutionally obtained.
To consider the constitutional challenges it is necessary to review the circumstances surrounding the out-of-State convictions.
*768 I. CONVICTION IN THE STATE OF UTAH
The defendant was convicted in Utah after a jury trial of assault with a deadly weapon by one convict upon another by means of a knife (former Utah Code, § 76-7-11). Due to Utah’s practice of destroying records after 10 years, no transcript of the Utah trial exists. Defendant’s briefs, both pro se and that written by his attorney, similarly cannot be located. The documents which this court has examined include a brief prepared on behalf of the State of Utah opposing Abbott’s appeal of the conviction, the opinion of the Utah Supreme Court affirming the conviction, as well as an affidavit submitted by the defendant to this court in which Abbott relates his recollection of the incident. These records elicit the following facts concerning the Utah trial.
On January 18, 1966, the defendant was serving a term of 0 to 5 years in the Utah State Prison for the crime of writing a check on insufficient funds. He became involved in a dispute with two inmates, Kenneth Olsen and James Christensen. The latter was allegedly stabbed by Abbott and died from his wounds two weeks after the incident.
Prior to trial, at the request of the Utah prosecutor, a competency hearing was conducted in December, 1966 to determine whether Abbott was competent to stand trial.[1] Dr. Roger S. Kreiger testified that in his opinion Abbott was sane. The defendant was adjudged competent and trial proceedings commenced in April, 1967.
Abbott, testifying in his own defense, stated that Christensen was a homosexual whose advances Abbott had resisted. The defendant further claimed that he had acted in self-defense.
During the trial two statements made by the defendant (allegedly in the absence of Miranda warnings; Miranda v Arizona, 384 US 436), were admitted. The first statement was taken after Abbott went to the captain’s office following the stabbing. The captain asked Abbott if the knife *769 which he surrendered to a prison guard belonged to him.[2] Abbott answered affirmatively. Abbott now contends that the statement was coerced. The second statement was directed to guard Lester Clayton: “Sergeant, everyone on the block likes you, but if these guys who talk to you know Chris is dead, there will be more.”
In April, 1967, the defendant was sentenced to 3 to 20 years’ imprisonment, to run consecutively to his earlier sentence.
Defendant Abbott appealed his conviction to the Supreme Court of the State of Utah. He claimed that he was denied a fair trial. Abbott alleged that he was not afforded effective assistance of counsel. He claimed that the Trial Judge erred in permitting the prosecution to impeach Abbott’s testimony by using statements made by the defendant immediately after the stabbing. He asserted that the prosecution suppressed evidence. In addition, Abbott claimed that it was improper for the prosecution to inquire whether he had offered his fellow convicts anything in exchange for their testimony. Abbott also contends that the court erred in denying his motion for dismissal of counsel. Finally, Abbott argued that section 76-7-11 of the Utah Code was unconstitutional.
Rejecting all of the claims, the Supreme Court of the State of Utah addressed itself primarily to the defendant’s argument concerning the alleged violation of Miranda rights. Holding that the defendant did not have a cognizable Miranda claim, and that the other alleged errors were unsupported in the records, Utah’s highest court affirmed Abbott’s conviction in all respects.
II. THE FEDERAL CONVICTION
Jack Henry Abbott escaped from Utah State Prison in March, 1971 and was apprehended in Colorado on April 26, 1971 after holding up a Denver bank. Abbott was charged *770 by both State and Federal authorities and entered pleas of not guilty in both cases.
The Federal court determined that Abbott’s competency to stand trial was questionable, and a psychiatric examination was scheduled for July 29, 1971. Dr. Edward Delehanty conducted a 15- to 20-minute session which terminated when Abbott “stormed out of the examination room in a very aggressive and hostile manner.” On September 3, 1971, Dr. Delehanty testified at a court hearing that, notwithstanding Abbott’s aggressive and hostile manner, he found no evidence that the defendant “is not able to understand the nature of the proceedings and to cooperate in his trial if he chose to do so.” A further examination of the defendant was scheduled for September 7, 1971, and Dr. Delehanty testified as to his latest findings on September 10, 1971. The doctor adhered to his prior assessment that the defendant was competent to stand trial. At this hearing, Abbott also took the stand and was asked a series of questions by the Assistant United States Attorney relating to the defendant’s understanding of the charges and his ability to assist counsel. The court adjudged the defendant competent to stand trial, and found that Abbott’s attorney had discussed the charges with the defendant and that Abbott understood them. The court arraigned Abbott on the bank robbery indictment and the defendant pleaded not guilty.
While the defendant was confined in the county jail, he received examination and treatment for various mental disorders. Specifically, on October 11, 1971 the jail physician, Dr. Evers, prescribed Valium for 30 days. The prescription was renewed for an additional 10 days on November 16, 1971. (On Jan. 5, the prescription was again renewed for 30 days.) During the earlier part of November, Abbott appeared disoriented and suffered from hallucinations. Dr. Evers prescribed Mellaril, a phenothiazene tranquilizer utilized in the management of manifestations of psychotic disorders. The Physician’s Desk Reference cautions against combining Mellaril with Valium since the combination may potentiate the action of Valium, particularly where suicidal tendencies are present. Notwithstanding this pharmacological warning, Abbott re *771 ceived Mellaril from November 22, 1971 through January 5, 1971. It was Dr. Evers’ opinion that the Mellaril would be effective in correcting Abbott’s thought processes.
Jack Abbott was scheduled to begin his trial on December 14, 1971. On December 13, he and his new attorney appeared before the court- for the purpose of changing Abbott’s plea to guilty on the count of the Federal indictment. (A second Federal count, as well as State charges, were dismissed.) The new attorney, Mr. Elmer Hamby, had been assigned five days earlier. The record indicates that the defendant and his attorney consulted on five occasions prior to Abbott’s change of plea. At the time of the plea, counsel stated that except for his initial meeting with Abbott the latter appeared to understand the proceedings against him and to act normally. (US Dist Ct, Col, civil action No. 75 F 660, p 4.) Mr. Hamby was also convinced that his client “understood the nature, extent and consequences of the plea arrangement” and that the plea was voluntary and knowledgeable. During the allocution, Abbott was informed of and indicated that he understood the type of offense with which he was charged, the punishment which would be imposed, and the waiver of his right to a jury trial. In addition, the following exchange took place:
“Court: Is this plea being made voluntarily of your own free will?
“Defendant: It is.
“Court: After full consultation with your lawyer?
“Defendant: Yes.
“Court: Are you tendering this plea of guilty, Mr. Abbott, because you are guilty and for no other reason whatsoever.
“Defendant: I am.”
Asked if he had any questions about the nature of the charge, the defendant responded negatively. The court ascertained that there existed a factual basis for the plea, and accepted it.
In 1977, defendant Abbott filed a motion in the United States District Court for the District of Colorado, in order to vacate his sentence pursuant to the postconviction remedies in section 2255 of title 28 of the United States Code. *772 The defendant advanced three arguments in support of this motion. First, he claimed that he was incompetent to enter a guilty plea at the time the plea was entered. Second, he alleged that the court failed to comply with the allocution provisions of rule 11 of the Federal Rules of Criminal Procedure (US Code, tit 18, Appendix). Finally, Abbott contended that he was misled by his counsel as to the strength of his legal position with regard to a possible insanity defense.
A hearing on defendant’s motion was conducted on April 1, 1977. The court declined to order Abbott’s personal appearance, since no constitutional or statutory right exists to be present at a section 2255 hearing. Judge Finesilver, the Presiding Judge, determined that Abbott’s presence was unnecessary for complete development of the legal arguments.
With regard to the first issue, the District Court stated that in a proceeding to reviéw defendant’s competence to enter a guilty plea, the Tenth Circuit has consistently followed the standard enunciated in Dusky v United States (362 US 402).
This standard requires that “the accused have ‘sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding — and * * * a rational as well as factual understanding of the proceedings.’ ” (Wolf v United States, 430 F2d 443, 444.) The defendant argued that the Supreme Court never adopted the Dusky standard as a measure of competence in a plea situation and that such standard is only applicable for assessing a defendant’s ability to stand trial. Abbott claimed that a more stringent standard of ascertaining competency should apply in a plea setting as opposed to a trial setting because the former involves an inherent waiver of important constitutional rights.
Conceding some logic to the defendant’s argument, the District Court nevertheless rejected it on the basis of the precedent established in the Tenth Circuit which mandates that the Dusky standard be adopted as a test of mental competency at the time of trial or plea.
In order to aid its determination on the issue of Abbott’s competency, the District Court referred to extensive medi *773 cal data concerning the effect of the simultaneous ingestion of Valium and Mellaril. Judge Finesilver held that the effect of these drugs on the defendant was not of such a nature as to render him incompetent to enter a guilty plea. This decision was based on expert medical opinion that Mellaril should “increase the ability to judge and weigh alternatives” and that “valium and mellaril, alone or in combination, would not so affect the person that he would not understand what was being offered to him” and that the drugs, “when taken together, might improve an individuals judgment.” (US Dist Ct, Col, civil action No. 75 F 660, p 6, supra.) Thus, the District Court concluded that Abbott failed to sustain his burden of proving that he was incompetent to enter a guilty plea on December 13, 1971.
The second contention in defendant’s section 2255 motion was that the sentence must be vacated because the waiver of rights advisement given by the Judge at the time of the plea did not meet the requirements of rule 11 of the Federal Rules of Criminal Procedure (US Code, tit 18, Appendix) nor the requirements announced by the Supreme Court in McCarthy v United States (394 US 459) and Boykin v Alabama (395 US 238). Abbott referred particularly to the plea court’s failure to expressly inquire whether Abbott intended to waive his privilege against self incrimination and his right to confront witnesses.
With respect to the alleged rule 11 violation, Judge Finesilver noted that the rule was general in nature and did not require the court to enumerate each and every right waived by the defendant at the time of plea. It did require that the record, viewed in the totality of the surrounding circumstances, demonstrate that the defendant be sufficiently aware of the consequences and alternatives to his guilty plea to render his plea a “voluntary and intelligent one.” (US Dist Ct, Col, civil action No. 75 F 660, p 12, supra.) The District Court held that when construed in light of the surrounding circumstances and record, the requisites of rule 11 of the Federal Rules of Civil Procedure (US Code, tit 18, Appendix) were complied with by the Judge who accepted the plea.
With regard to the claimed violations of Boykin and McCarthy (supra), Judge Finesilver recognized that both *774 cases allude to a specific waiver of the right of confrontation and of the privilege against self incrimination. However, the Tenth Circuit has not interpreted these decisions as an absolute, inflexible mandate. The District Court noted that the Tenth Circuit has interpreted Boykin as requiring only a record showing of a voluntary and intelligent plea. (Stinson v Turner, 473 F2d 913.)
Judge Finesilver concluded that the Boykin requirements were not violated by the advisement given and waivers received at the time of Abbott’s guilty plea on December 13, 1971.
Finally, in his section 2255 motion, Abbott argued that his sentence should be vacated because he was misled by his counsel as to the possibility of interposing an insanity defense at trial. The District Court summarily dismissed this claim holding that there was absolutely no factual basis to support such allegation.
Abbott appealed to the United States Court of Appeals for the Tenth Circuit where he reiterated substantially the same arguments as he had presented to the District Court. The Court of Appeals held that the defendant’s plea was voluntarily and intelligently entered and affirmed the District Court’s refusal to vacate the defendant’s sentence.
III. CONSTITUTIONAL CHALLENGES TO THE UTAH CONVICTION
THE MISSING TRIAL RECORD
The defendant claims that the absence of transcripts from the trial court of Utah prevents him from mounting the collateral attack to which he is statutorily entitled. He contends that the respondent’s brief on appeal and the opinion of the Utah Supreme Court fail to provide sufficient facts on which to base a fair and impartial assessment of the events in 1967.
It is undisputed that a stenographic transcript of the proceedings is an invaluable aid to the prosecution of an appeal. (People v Rivera, 39 NY2d 519.) However, a stenographic transcript is not necessarily the only effective way to present the issues on appeal. “Thus, while a defendant should have as fair an appeal as possible, and while, if the use of available minutes would aid in assuring it, he is entitled to have their assistance, unless they have become *775 unavailable because of any active fault on the part of the People, it does not necessarily follow from the fact that their absence compels resort to a less perfect record, that -the right to appeal must be deemed to be frustrated. For, in this imperfect world, the right of a defendant to a fair appeal, or for that matter a fair trial, does not necessarily guarantee him a perfect trial or a perfect appeal.” (39 NY2d, at p 523.) The fact that the Utah trial transcript has been rendered inaccessible in the instant case does not, as defendant suggests, automatically preclude a fair assessment by this court of the events surrounding the Utah trial. The facts have been reconstructed in some detail by the defendant’s brief, by the respondent’s brief which was submitted to the Utah Supreme Court as well as by an affidavit written by Abbott and submitted to this court.
Moreover, the absence of a trial transcript in this proceeding does not constitute denial of due process of law. While the holding of Rivera (supra) is clear that a defendant is entitled to the transcript of a trial or its reconstructed equivalent for the purpose of implementing a clear right to appeal, there is no concomitant right to preserve a trial transcript forever, long after the defendant has been afforded his right to appeal.
The destruction of the transcript of the Utah trial occurred as a result of established administrative procedure in the State of Utah, some 15 years after the defendant’s conviction had been reviewed and affirmed by the Supreme Court of Utah. The defendant’s allegation that, were a trial transcript available, additional constitutional errors would become apparent, is pure speculation and is clearly no basis for controverting the Utah conviction.
UTAH AND MIRANDA
Defendant next argues that his rights guaranteed under Miranda v Arizona (384 US 436, supra) were violated by admission at the Utah trial of two statements. The first was made when defendant admitted to a captain of the guards that the knife he had surrendered to another guard was his. The second statement, uttered after the defendant was taken to the captain’s office following the stabbing was “Sergeant, everyone on the block likes you, but if these *776 guys who talk to you know Chris is dead, there will be more.” Abbott claims that neither statement was preceded by Miranda warnings. (In his affidavit submitted to this court, Abbott acknowledged possession of the knife but indicated that he had thrown it away. He claims that coercive tactics of the Utah authorities forced him to admit ownership.) The defendant argues that the only way in which this court could salvage the Utah conviction and consider it for sentence enhancement purposes is if it finds the violation of Miranda to be harmless error within the meaning of Chapman v California (386 US 18). The defendant further claims that this court is in no position to declare the Miranda violation harmless beyond a reasonable doubt as required by Chapman because of the absence of a trial transcript.
The People contend that the defendant is collaterally estopped from controverting his Utah conviction since he has previously litigated the precise Miranda issue on direct appeal and the question was resolved against the defendant. Abbott asserts that CPL 400.15 (procedure for determining whether defendant is a second violent felony offender) and 400.21 (procedure for determining whether defendant is a second felony offender) afford a defendant the right to a de nova review of the constitutionality of the earlier convictions regardless of whether or not the specific issues raised have been decided out of State or not. In addition, the defendant contends that because he is not seeking to vacate the Utah conviction but is merely opposing New York’s use of that conviction, the matter is solely between defendant Abbott and the State of New York, and New York should not be bound by Utah in resolving it. Finally, Abbott claims that collateral estoppel is inapplicable here because the burden of proof iñ the Utah proceeding was different from the burden of proof regarding the present issue. In the former, the defendant had the burden of proving that his conviction was constitutional. In the instant case, Abbott claims that the burden of proof rests upon the People to prove beyond a reasonable doubt the constitutionality of the defendant’s previous felony convictions.
*777 COLLATERAL ESTOPPEL
The doctrine of collateral estoppel was characterized by the United States Supreme Court in Ashe v Swenson (397 US 436, 443) as “an extremely important principle in our adversary system of justice. It means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.” Collateral estoppel is essentially a doctrine of judicial economy “based upon the proposition that ‘where it can be fairly said that a party has had a full opportunity to litigate a particular issue, he cannot reasonably demand a second one’ ”. (Duran v Melton, 108 Misc 2d 120, 121.) Although collateral estoppel has its origin in a civil litigation, its applicability to criminal prosecutions has long been recognized. In a criminal case, the collateral estoppel doctrine is usually used against the prosecution. There is, however, considerable authority for the theory that collateral estoppel may be used to prevent a criminal defendant from relitigating issues decided by a valid conviction in a prior proceeding. (United, States v Colacurcio, 514 F2d 1; Hernandez-Uribe v United States, 515 F2d 20, cert den 423 US 1057; People v Scott, 93 Misc 2d 1074; United States ex rel. DiGiangiemo v Regan, 528 F2d 1262, cert den sub nom. DiGiangiemo v Olgiatti, 426 US 950.)
While collateral estoppel is quite rigidly adhered to in civil cases, it is not absolute in a criminal case and should not be unjustly applied. (People v Plevy, 52 NY2d 58; People v Berkowitz, 50 NY2d 333; cf. People v Reisman, 29 NY2d 278 [collateral estoppel not applied where evidence related to New York case was suppressed in California, but parties and issues were not the same. Any taint was held to have been attenuated].)
The defendant claims that notwithstanding the accepted practice by courts of invoking the doctrine of collateral estoppel against a criminal defendant in an appropriate case, the principle does not apply when issues arise concerning CPL 400.15 and 400.21.
Initially, I note that New York courts have routinely applied collateral estoppel in predicate felony proceedings when the defendant raises an issue of unconstitutionality *778 which has previously been resolved against the defendant in another court in this State. For example, in People v Blando (29 AD2d 689), the Appellate Division refused to allow the defendant to retry the issue of voluntariness of a confession when the question was fully litigated and decided at an earlier hearing. (Cf. People v Brockway, 29 AD2d 578.) Yet" here, Abbott maintains that the fact that an appellate court in Utah reviewed the constitutionality of the conviction does not collaterally estop the defendant from having the constitutionality reviewed in New York. In substance, the defendant contends that a de nova review is mandated when an out-of-State judgment is at issue.
Abbott refers to People ex rel. Warren v Smith (79 Misc 2d 643) as supportive of his position. In Smith the court stated that the former section 1943 of the Penal Law was unconstitutional because felons had no way to contest the constitutionality of an out-of-State predicate felony in New York courts. The present sections (Penal Law, § 70.06; CPL 400.21) corrected this defect and provided a defendant an opportunity to contest the constitutionality of any predicate felony conviction. The Smith court, however, clearly did not say that the defendant is afforded the opportunity to contest the constitutionality of any predicate felony conviction even if such constitutionality has already been upheld in another jurisdiction. Indeed, case law indicates that further review is unwarranted. For example, in Williams v United States (481 F2d 339), the defendant was convicted in 1964 of violating Federal narcotics laws, and was sentenced by the New York Federal District Court as a second felony offender. The conviction which was the predicate for the 1964 sentence was rendered in the Eastern District of Virginia. The defendant did not appeal from the Virginia conviction allegedly because of the failure of both the court and his counsel to inform the defendant of his right to appeal. Between 1964 and 1972, the defendant filed a total of six motions in the Federal courts of New York and Virginia seeking relief pursuant to section 2255 of title 28 of the United States Code. The New York District Court in a decision affirmed by the United States Court of Appeals held that the defendant, following adverse rulings by the Virginia Federal court on his claim of *779 ineffective assistance of counsel, could not attack the predicate conviction on the same grounds in New York Federal court. The decision clearly stands for the proposition that a New York court, “absent exceptional circumstances” is not required to rule de nova on the legality of a conviction in another jurisdiction where the- claimed illegality of the conviction has been “raised and litigated” in that jurisdiction.
Abbott further alleges that this court cannot be bound by the Utah decision because he is not seeking collateral relief to vacate or overturn the prior conviction. Rather, the defendant argues that he is merely contesting New York’s use of that conviction for sentence enhancement purposes. As such, he contends that this is a matter solely between Jack Abbott and the State of New York.
Abbott’s contention here is flawed. Regardless of whether the issue is overturning a prior conviction or contesting a State’s use of that conviction, the seminal question in both instances is identical — that is, whether the prior conviction is constitutional. In this case, since that very issue has already been resolved in the appellate courts of Utah, it cannot be maintained that the matter is solely between Jack Abbott and the State of New York. The final judgment of a sister State is inextricably involved, and cannot be ignored. Moreover, Abbott’s reliance on United States ex rel. LaNear v LaVallee (306 F2d 417) is misplaced. In LaVallee, the petitioner was convicted in a New York State court on a burglary charge. He was sentenced as a second felony offender based on a prior conviction in a Missouri State court. On appeal from denial of his petition for habeas corpus directed at the validity of his Missouri conviction, the Court of Appeals directed the District Court to hold an evidentiary hearing on the merits of petitioner’s claim. The significant distinction between LaVallee and the case at bar is that in the former, the challenge to the prior conviction was brought for the first time in the sentencing court. This crucial distinction was highlighted by the Williams case. In contrast, in the instant case, Abbott has already contested the alleged Miranda violation in Utah’s highest appellate court.
*780 Nor do I adopt the statutory interpretations of CPL 400.15 and 400.21 advanced by defendant Abbott. The CPL does not distinguish between the method for contesting New York, as opposed to out-of-State convictions. To afford the defendant de nova review of a final judgment of the State of Utah when, were the judgment rendered by the State of New York, collateral estoppel would surely preclude such review, would be irrational.
The defendant Abbott’s final argument against invocation of collateral estoppel is addressed to the issue of burden of proof. Abbott contends that in the Utah appeal the defendant had the burden of proving that his conviction was unconstitutional. In the present proceeding, it is alleged that the People have the burden of proving the constitutionality of the defendant’s previous convictions beyond a reasonable doubt. The defendant maintains that collateral estoppel should not apply because the applicable standard of proof in New York is stricter than that applied by the Utah courts. Abbott is relying on the proposition that a finding based on a lesser standard of proof cannot be used to collaterally estop a later finding which requires a higher standard of proof.
Analysis of the relevant statutory sections indicates that this contention is erroneous. CPL 400.15 (subd 7, par [a]) and 400.21 (subd 7, par [a]) do state that “[t]he burden of proof is upon the people and a finding that the defendant has been subjected to a predicate [violent] felony conviction must be based upon proof beyond a reasonable doubt”. I interpret this as meaning that the People have to prove beyond a reasonable doubt the fact of defendant’s previous felony conviction, and that he is the person so convicted. Burden of proof in this section, however, refers solely to a factual finding. It is the following paragraph (CPL 400.15, subd 7, par [b]; 400.21, subd 7, par [b]) which addresses a defendant’s right to controvert the constitutionality of a previous conviction and that paragraph conspicuously does not mention burden of proof. It states that “[t]he defendant may, at any time during the course of the hearing hereunder controvert an allegation with respect to such conviction * * * on the grounds that the conviction was unconstitutionally obtained.” (Federal Constitution.) This section has *781 been interpreted as placing upon the defendant the burden of establishing the unconstitutionality of the previous conviction by factual support. (People v Harley, 52 AD2d 698; see People v Spencer, 32 NY2d 446.) Thus, read together these statutory provisions require that the People primarily establish beyond a reasonable doubt the existence or fact of a predicate felony conviction. Once this burden is met, it is incumbent upon the defendant to come forward with some quantum of evidence that the conviction was unconstitutionally obtained.
Moreover, it is interesting to note that when a defendant makes a motion pursuant to CPL 400.20 to set aside a sentence after its entry in a New York court, the burden of proof regarding unconstitutionality rests with the defendant. It would be anomalous to hold that the burden of proof shifts simply because the sentence has been imposed out of State.
Apart from collateral estoppel, a de nova review of the Utah conviction would seem to contravene the doctrines of comity and full faith and credit which require that a State give the judgments of sister States the same full faith and credit it accords its own judgments. (US Const, art IV, § 1.) In the absence of manifest injustice courts of one State should not tamper with the final judgment of a sister jurisdiction, particularly when the judgment has been reviewed on appeal.
Furthermore, even if the collateral estoppel doctrine were inapplicable, the Utah conviction cannot be deemed invalid since defendant Abbott has failed to overcome the presumption of regularity of the Utah proceedings. This presumption of regularity attends all judgments of conviction. (People v Bell, 36 AD2d 406, affd 29 NY2d 882; McCormick, Evidence [2d ed], § 343, p 807.) The presumption remains until rebutted by substantial evidence to the contrary. (People v Richetti, 302 NY 290; People v Bell, supra; People v Rosello, 97 Misc 2d 963.)
Abbott argues that since the Utah Supreme Court strongly criticized the decision of Miranda v Arizona (384 US 436, supra) that court either misapplied or failed to *782 follow it. Such a contention is unsupported by the record. The fact that the Utah Supreme Court did not approve of Miranda does not mean that it chose not to follow it. All courts follow decisions, statutes, and rulings with which they disagree but are bound to obey. That is the essence of the rule of law.
Finally, Abbott maintains that the tolling provision contained in section 70.06 of the Penal Law (sentence of imprisonment for a second felony offender) is unconstitutional as applied to a defendant who has lived his entire life in a prison and who has committed a crime that can only be committed in prison. Section 70.06 of the Penal Law states that for the purpose of determining whether a prior conviction is a predicate felony, the sentence must have been imposed not more than 10 years before the commission of the present felony. However, the statute also states in pertinent part that “any period of time during which the person was incarcerated for any reason between the time of commission of the previous felony and the time of commission of the present felony shall be excluded and such ten year period shall be extended by a period or periods equal to the time served under such incarceration”. (Penal Law, § 70.06, subd 1, par [b], cl [v].)
It is Abbott’s contention that the application of this provision is unconstitutional with regard to a defendant who has lived his entire life in prison. Abbott maintains that prison is the only “society” that the defendant has ever known and that it is a violation of equal protection to apply this tolling statute to a prior felony conviction that could only be committed in prison.
The defendant’s contention is without merit. It is clearly not irrational to distinguish between a law abiding citizen living outside the confines of a penal institution and a prisoner who is living within a penal institution. While the defendant claims that he should be given credit for crime-free time spent within the confines of prison, the restrictive nature of incarceration reduces the likelihood that a person will commit a crime. Therefore, it cannot be maintained that a crime-free period in prison amounts to a true *783 reflection of an inmate’s propensity to lead a crime-free existence outside of prison.
Thus, respecting the Utah conviction, I hold that the absence of a trial transcript does not constitute a violation of due process. Collateral estoppel is appropriately invoked to prevent this court from engaging in a de nova review of the Utah conviction and CPL 400.15 and 400.21 do not compel such review. In addition, the defendant has failed to rebut the presumption of regularity of the Utah judgment. There is no evidence that the Utah Supreme Court ignored or misapplied the Miranda principles. The 10-year tolling provision of section 70.06 of the Penal Law does not violate equal protection as applied to this defendant. As such, this court must utilize the Utah conviction as a predicate violent felony for sentence enhancement purposes.[3]
IV. CONSTITUTIONAL CHALLENGES TO THE FEDERAL CONVIC- ' TION
Defendant Abbott contends that the 1971 bank robbery conviction cannot be used as a prior violent felony for sentence enhancement purposes because the plea allocution fell below minimal standards pursuant to both Federal and New York State law. The defendant further asserts that his plea was involuntarily made because his mental condition had been deteriorating and because he was under the influence of drugs at the time of the plea. He also maintains that the Federal courts applied the incorrect legal standard for assessing competency to enter a guilty plea and that the trial court should have inquired into the issue of his sanity at the time of the crime. Finally, Abbott *784 contends that the Federal court opinions do not collaterally estop this court’s review of the constitutionality of the Federal conviction.
With regard to the defendant’s collateral estoppel argument, I note at the outset that the principles outlined above in the analysis of the Utah conviction are similarly applicable here.
The defendant asserts that the issue considered by the Federal courts in the habeas review is different from the issue at bar. The defendant further claims that the burden of proof in the habeas proceeding was significantly different from the burden of proof here. Specifically, Abbott maintains that in the habeas proceeding, it was incumbent upon the defendant to prove by a preponderance of the evidence that his pleas were unconstitutionally obtained whereas the burden in this proceeding rests with the People to prove the constitutionality of the previous conviction beyond a reasonable doubt.
The defendant’s allegations that different issues were presented in the two forums are incorrect. The germane question in both this court and the Federal proceedings concerns the validity of the defendant’s guilty plea. This issue was fully and fairly litigated in the Colorado Federal courts, both of which resolved the question against the defendant.
Focusing upon the defendant’s second contention, I note that the supposed disparity in the burden of proof does not preclude this court from invoking the collateral estoppel doctrine so as to prevent review of the Federal proceedings. As was set forth above, neither CPL 400.15 nor 400.21 specifically require the People to establish the constitutionality of a defendant’s previous conviction beyond a reasonable doubt. The People merely have the burden of proving the fact of defendant’s previous felony conviction beyond a reasonable doubt. It is incumbent upon the defendant to initially establish the unconstitutionality of the previous conviction by factual support. (People v Harley, 52 AD2d 698, supra.) As such, pursuant to CPL 400.15 (subd 7, par [b]) and 400.21 (subd 7, par [b]), defendant Abbott has the burden of going forward with evidence establishing *785 an insufficient plea allocution and an insufficient inquiry by the Federal court regarding the defendant’s mental state. The only manner in which the defendant purports to do this is by referring to the identical record exhaustively reviewed by the District Court of Colorado and the Tenth Circuit Court of Appeals when those courts denied the defendant’s section 2255 motion. The defendant urges this court to disregard the Federal court opinions because those decisions allegedly failed to adequately consider the “flurry of warning flags regarding the effect of drugs on Abbott’s competency.” I cannot agree. Both the District Court of Colorado and the United States Court of Appeals specifically referred to convincing medical evidence which indicated that the combination of drugs which the defendant was receiving did not undermine the mental state required to enter a valid plea. In addition, both the District Court and the United States Court of Appeals noted the discrepancy between Abbott’s description of his own condition and the description of the defendant’s condition by those around him on December 13, 1971, and each court reasonably concluded that the defendant’s credibility on this issue was doubtful.
Abbott contends that the allocution fell below minimal standards under both New York and Federal law because the trial court failed to advise the defendant that by pleading guilty he waived his right to confront witnesses and waived his privilege against self incrimination. (Boykin v Alabama, 395 US 238, supra; McCarthy v United States, 394 US 459, supra.) The defendant further maintains that the plea was improper because the trial court failed to elicit from Abbott a single admission about any element of the crime.
In People v Nixon (21 NY2d 338), the New York Court of Appeals ruled that in New York, there is no mandatory uniform catechism in pleading procedure. “[A] colloquy in the taking of a guilty plea should not be parsed in the manner that a common-law pleading would have been scrutinized in the days of the Year Books * * * [The colloquy] should not be subjected to legalistic hypertechnical examination.” (People v Castro, 37 NY2d 818, 819-820.) It has recently been stated that “all that is required is a *786 knowingly and voluntarily entered plea”. (People v Ayala, 112 Misc 2d 821, 825; cf. People ex rel. Woodruff v Mancusi, 41 AD2d 12; People v Pruitt, 83 AD2d 872.)
The record clearly indicates that these requisites were satisfied in the case at bar. Abbott’s attorney at the time of the plea represented that his client understood the nature, extent and consequences of the plea arrangement. (US Dist Ct, Col, civil action No. 75 F 660, p 4, supra.) Moreover, during the allocution, the defendant affirmatively indicated that he had consulted with his attorney, that he understood the type of offense with which he was charged and the possible punishment and that he was waiving his right to a jury trial. {Id., p 10.) Furthermore, the defendant was clearly responsive to the Judge’s inquiries concerning the issue of voluntariness and indicated that the reason he was pleading guilty was because he was in fact guilty. Furthermore, at the time of the plea allocution, the United States Attorney outlined in detail without contradiction, the overwhelming evidence of the defendant’s guilt of armed bank robbery.
This court further recognizes that the defendant, at the time of the plea, was by no means a novice to the criminal justice system. Abbott’s guilty plea was entered on the eve of trial (the plea was taken on Dec. 13, 1971; the trial had been scheduled for the following morning). This is a strong indication that the plea, as opposed to being involuntary, evidenced the defendant’s disposition and reasoned decision to avoid trial. “That [the defendant] voluntarily chose not to risk his chances on a trial and not to litigate the question of his guilt * * * but rather to exact a bargain plea * * * should not now permit him to assert prejudice resulting from the deprivation of rights that would have accrued to him on a trial.” (People ex rel. Woodruff v Mancusi, supra, p 14.) The failure of Colorado trial court to advise Abbott of all his Boykin rights does not invalidate the plea since it was clearly made knowingly and voluntarily. Thus, the defendant’s guilty plea entered in the Federal court in Colorado is constitutional when scrutinized under New York law.
In a related argument, the defendant contends that the Federal courts applied the incorrect legal standard (in *787 assessing his competency to enter a guilty plea). The Federal court utilized the test enunciated by the United States Supreme Court in Dusky v United States (362 US 402, supra) which requires that the defendant have the present ability to consult with his attorney with a reasonable degree of rational understanding, and that the defendant have a rational and factual understanding of the proceedings. Abbott maintains (as he previously did unsuccessfully in the habeas motions) that the Dusky standard applied only to assessing the defendant’s competency to stand trial. He contends that the legal standard for determining whether a defendant is competent to plead guilty and thereby waive important constitutional rights, should be more stringent than that announced in Dusky. The defendant cites Chavenz v United States (656 F2d 512, 519, n 3) as illustrative of this two standard approach: “The different levels of competence are related in that a higher level generally includes all lesser ones. Thus a defendant who is competent to plead guilty will normally also be competent to stand trial * * * The converse is not true * * * A defendant who is competent to stand trial is not necessarily competent to plead guilty.”
Conceding that this rationale has some merit, I note that it is not uniformly followed by New York courts and is not binding on this court. In Sharp v Scully (509 F Supp 493, 495) the United States District Court held that “the adoption of a different and higher standard of mental competency for pleading guilty than for proceeding to trial would be utter mischief, and would force psychiatrists, and certainly judges, to draw lines that are in fact ‘too fine’ to be determined.” Were this court to adopt the rule posted by Abbott, it would be holding, in essence, that there are defendants who are charged with serious crimes who allegedly lack the mental capability to plead guilty but who at the same time possess the mental capacity to go to trial and be convicted. (509 F Supp, at p 495.) “Such an unrealistic conclusion, in the guise of protecting rights, would place a number of unfortunates, situated similarly to petitioner, at a horrible disadvantage.” (509 F Supp, at p 495.)
It is unwise to promulgate a rule which “forces a trial on a person found competent to go to trial but not competent to cop out.” (Sharp v Scully, supra, p 495.)
*788 Therefore, I conclude that this court is not compelled to utilize a stricter standard for determining competency to plead guilty than it uses to test the competency of a defendant to proceed to trial. Since the Federal courts in Colorado employed a standard acceptable under New York law, its conclusion that the defendant was in fact competent to enter a guilty plea cannot be controverted by any claim that New York courts would have adhered to a stricter measure.
Abbott further claims that it was error for the habeas court to have denied the defendant the opportunity to be present at the section 2255 hearing and to have precluded defense counsel’s request to present live testimony and confront witnesses. It need only be noted (as did both Federal courts) that the defendant has no constitutional or statutory right to be present at such hearing. (US Dist Ct, Col, civil action No. 75 F 660, p 2, supra.) The procedure of utilizing interrogatories and cross interrogatories is an accepted practice at such hearings and this method was chosen only after the District Court reasonably determined that the defendant’s presence was unnecessary for complete development of the legal arguments. Abbott has presented this court with no convincing evidence which would indicate that the Federal court’s decision was unjustified or that the interrogatories failed to elicit the facts necessary for a determination of the habeas issue.
The defendant finally alleges that it was incumbent upon the plea court to explore the question of Abbott’s sanity at the time of the crime since the psychiatric record indicated elements of an insanity defense. This argument is unpersuasive. The defendant, adjudged competent to enter a guilty plea, indicated that he was doing so because he was in fact guilty. Abbott’s attorney was satisfied that the defendant “felt it was the best course of action”. (US Dist Ct, Col, civil action No. 75 F 660, p 4, supra.) Moreover, the trial court determined that there existed a factual basis for the plea.
Under these circumstances, the Colorado trial court did not have the duty to examine the issue of the defendant’s sanity at the time of the crime.
*789 I hold that the collateral estoppel doctrine should apply to preclude de nova review of the Federal conviction pursuant to CPL 400.15 and 400.21. Moreover, even when examined under New York law, the defendant’s plea was knowingly and voluntarily made. The plea allocution complied with the constitutional standards as interpreted by this State. It is not incumbent upon a trial court to apply a more stringent standard to assess defendant’s competency to plead guilty as opposed to going to trial. No persuasive evidence has been adduced to rebut the presumption of regularity surrounding the Federal proceedings. For these reasons, the defendant’s 1971 Federal bank robbery conviction may be used as a predicate violent felony for sentence enhancement purposes.
CONCLUSION
Jack Henry Abbott’s 1966 Utah conviction for assault of one convict upon another with a weapon and his 1971 Federal conviction for armed bank robbery may be used for sentence enhancement purposes. This court is therefore mandated to sentence the defendant as a persistent violent felon pursuant to CPL 400.15 and section 70.08 of the Penal Law.

. The transcript of this hearing could not be located. However, the defendant calls to this court’s attention a newspaper article which describes the hearing. It was reported that at one point during the proceedings Abbott threw two water glasses, one at the hearing Judge, and another at Dr. Kreiger. The reasons for that incident are unclear.

. At the trial, prison guard Lester Clayton testified that he was present during the stabbing incident and observed two inmates, Christensen and Olsen, walking along a corridor. He then observed Abbott approach Christensen from behind and attack. Responding to Christensen’s cries for help, Clayton next says Olsen hit Abbott’s hand. The guard ordered Abbott to drop the knife and the latter complied.

. The defendant submits that his Utah conviction is invalid because it was based upon violations of a Utah statute which was subsequently repealed. He maintains that the Utah statute was modeled after a California statute which has been declared unconstitutional. The California statute to which Abbott refers made mandatory the death penalty for a person undergoing a life sentence who with malice aforethought commits an assault upon the person of another with a deadly weapon or instrument. In Ex Parte Wells (99 P Supp 320) a lower Federal court held that the statute in question would violate the Fourteenth Amendment if such a sentence was imposed upon a person who might have been given a life imprisonment sentence by the California Adult Authority but who had not actually been sentenced to life at the time of the crime. Not only do the circumstances of the Wells case differ from the instant case, but the District Court’s decision was reversed by the United States Court of Appeals for the Ninth Circuit in Duffy v Wells (201 F2d 503).