*888 OPINION OF THE COURT
Peter J. Benitez, J.
Defendant is charged in an indictment with arson in the second degree and other crimes. She moved to suppress statements made by her to Fire Marshal Brady who investigated the fire that defendant is charged with having set. This court held a hearing on that motion which hearing consisted of the testimony of Fire Marshal Brady, a videotape of an interview of defendant by an Assistant District Attorney on the day of her arrest, and the reports of court-appointed psychiatrists who examined defendant to determine her fitness to stand trial on these charges. The court finds Fire Marshal Brady to be a credible witness. Based on the record of the hearing this court renders the following findings of fact and conclusions of law.
Fire Marshal Brady responded to a fire at 813 Elsmere Place in the Bronx on April 23, 1996. After discussing the fire with people at the location, the Fire Marshal left to go to the defendant’s apartment in another building. It is clear that the information received by the Fire Marshal had provided him with a basis to believe that Ms. Newton was responsible for the fire. When the Fire Marshal arrived at Ms. Newton’s apartment he heard someone speaking inside on the telephone. He identified himself and asked the occupant to come out. Fire Marshal Brady heard the telephone conversation end and no one opened the door. Shortly thereafter, he was told that the occupant of the apartment had exited out the fire escape. The Fire Marshal, accompanied by police, then found defendant walking down the street. The Fire Marshal placed the defendant in his vehicle and returned to the scene of the fire. After interviewing witnesses he placed the defendant under arrest.
While in the Fire Marshal’s vehicle and later in a second vehicle which transported her to the offices of the Fire Marshal, the defendant was not questioned. However, she made spontaneous statements which made no sense to the Fire Marshal and which he described as rambling. At the Fire Marshal’s office Marshal Brady advised defendant of her rights. He advised her of all the rights and warnings required by Miranda v Arizona (384 US 436 [1966]), obtained her verbal response that she understood what she was being told and had her initial a sheet of paper which set forth in writing the warnings and rights. While that sheet of paper has been lost or misplaced and no copy created, this court finds that the failure to maintain this document does not in any way affect this court’s *889 findings that the Fire Marshal was credible, that he gave defendant the warnings and advised her of those rights required, and that she responded that she understood what she had been told.
After advising defendant of her rights the Fire Marshal asked her if she was willing to answer questions. Defendant said yes. Thereafter, he asked her if she knew anything about the fire. At first defendant said that she had been at a laundry at another location when the fire began. Then after further questioning, defendant said she had been at the apartment where the fire occurred in the morning, had an argument with the occupants and had dropped a cigarette in a cardboard box outside the door and a match in a pile of wood outside that door. The Fire Marshal then asked whether she would make a written statement concerning the fire and she complied.
Later in the day the Fire Marshal brought defendant to an interview room where she was questioned by an Assistant District Attorney. While the People stated that they do not intend to use the Assistant’s interview at trial, defense counsel had it introduced at the hearing in connection with the issues to be decided by this court. The taped interview shows defendant being advised of her rights by the Assistant District Attorney, stating that she understood those rights and agreeing to answer questions. Notably, when the Assistant District Attorney asked her if she understood that she had the right to consult with an attorney and have an attorney present during any questioning, defendant’s initial response was “whatever you say.” When further asked if she understood what she had just been told she said “yes.” Thereafter, defendant, in a 20-minute question and answer session, responded to the Assistant’s questions, often giving highly agitated, rambling and vividly worded descriptions and characterizations of her actions and of the occupants of the apartment where the fire had occurred and her past relationship with them.
Once arraigned on the arson charges in criminal court, that court ordered an examination of defendant’s competency to stand trial pursuant to CPL article 730. Defendant was examined by two court-appointed psychiatrists on May 30, 1996 (37 days after her arrest) and they found that she was not fit to stand trial. Accordingly, defendant was committed to a mental health facility. Seven months later, defendant was reexamined, found fit to stand trial and returned to court. This court has read the reports prepared in connection with defendant’s initial CPL article 730 examination and those pre *890 pared in connection with her return to court to stand trial. The conclusion of the psychiatrists who examined defendant in May 1996 was that she was schizophrenic with a history of substance abuse and unable to assist her attorney in her defense. In later finding her fit to stand trial, the same psychiatrists found that, while she still had a mental disease or defect, she was able to understand the nature of the charges and assist her attorney in her defense. The psychiatrists noted that her condition could change as she had stopped taking her psychotropic medications.
The People have the burden of proving the voluntariness of a defendant’s statements beyond a reasonable doubt at a pretrial suppression hearing. (People v Holland, 48 NY2d 861 [1979].) This requires that the People establish that defendant made a voluntary, knowing and intelligent waiver of her US Constitution Fifth Amendment privilege against self-incrimination and her right to the assistance of counsel in determining whether to answer questions of law enforcement. (People v Valerius, 31 NY2d 51, 55 [1972].) Once the lawfulness of the police conduct is established, defendant may yet obtain suppression of her statements if the defendant persuades the court that she was not mentally competent to understand the rights or to waive her right to remain silent and the right to counsel. (See, People v Love, 57 NY2d 998 [1982]; People v White, 85 AD2d 787 [3d Dept 1981].)
Several cases have considered the relationship between general mental capacity and a person’s ability to understand one’s rights and knowingly and intelligently waive one’s right to remain silent and right to counsel. However, only one court has, albeit briefly, considered the relationship between a mental disability which affects a person’s ability to assist counsel in one’s defense (the standard for determining fitness to stand trial) and such person’s ability to decide to forego the assistance of an attorney and respond to questions of law enforcement. For example, in People v Williams (62 NY2d 285, 287 [1984]), the Court stated, “[a]n effective waiver of Miranda rights may be made by an accused of subnormal intelligence so long as it is established that he or she understood the immediate meaning of the warnings. An inability to comprehend the import of the Miranda warnings in the larger context of criminal law generally does not of itself vitiate the validity of the waiver.” Accordingly, the Court found that “fully comprehending the policy behind the Miranda rights and the various implications of waiving them” was not required for there to be *891 a valid waiver of those rights. (People v Williams, supra, at 290.) In another case, People v Williams (174 AD2d 969 [4th Dept 1991], lv denied 78 NY2d 1015 [1991]), the Court stated the long-accepted formula, “ ‘[w]hether the defendant knowingly and intelligently waived his rights is a factual question to be determined by the totality of the circumstances, which includes the defendant’s limited mental capacity as but one factor’ ” (citations omitted). Based on these principles, courts have both upheld and repudiated waivers of Miranda rights where the defendants were in mental institutions at the time of the waiver, based on the facts developed at the hearing. (See, People v Love, supra; People v White, supra.)
The one reported case where the relationship between a CPL article 730 finding of being not fit to stand trial and ability to effectively waive one’s right to counsel in the context of police questioning was discussed is People v Krom (91 AD2d 39 [3d Dept 1983], affd without discussion of issue 61 NY2d 187 [1984]). In Krom the defendant made incriminating statements and three weeks later was found not fit to stand trial. On appeal from the denial of the motion to suppress and conviction, the appellate court simply held that there was “psychiatric evidence both to substantiate defendant’s competency [at the time of the questioning] as well as to explain why he could have been competent at the time of his arrest yet found to be incompetent to stand trial upon examination three weeks later.” (People v Krom, supra, at 43.)
In a related context, the Court of Appeals has made it clear that the minimum standard by which a court determines a defendant’s ability to waive counsel and proceed to trial pro se is the same as that used to determine a defendant’s competency to stand trial. (People v Reason, 37 NY2d 351 [1975].) In that case, the Court held that a defendant who was found fit to stand trial could waive counsel and represent himself pro se. In doing so, the Court stated, “[w]e reject the contention that there are two separate and distinct levels of mental capacity— one to stand trial, another to waive the right to be represented by counsel and to act as one’s own attorney.” (People v Reason, supra, at 353-354.) Applying this principle, the First Department rejected the argument that pro se representation requires greater mental competency than assisting counsel and held that where a defendant is fit to stand trial, unless there is a basis to believe that the defendant would disrupt the proceedings, a defendant cannot be denied the right to waive counsel and proceed to represent himself. (People v Schoolfield, 196 *892 AD2d 111 [1st Dept 1994].) Accordingly, in this context the converse is true, that a person who is not fit to stand trial (as defined by CPL art 730) is not mentally competent to waive his or her right to counsel and proceed to trial pro se.
Therefore, while no court appears to have directly considered the question, the reasoning of the foregoing precedents would compel the conclusion that where a defendant is not able to assist counsel in his/her own defense due to a mental impairment or disability, such defendant is not competent to waive his/her right to counsel in deciding whether to submit to questioning by law enforcement.
Here, defendant was not found unfit to proceed to trial until 30 days after her arrest. Yet, when she was interviewed by the psychiatrists who found her not fit to stand trial she exhibited behavior which has a significant bearing on her mental state 30 days earlier. One psychiatrist noted that, if at all stressed, she would become explosive and angry and was only intermittently cooperative with them. The other psychiatrist stated that defendant was not cooperative, that she was delusional regarding the criminal charges (believing that the complainant was plotting against her), and concluded that defendant was “psychotic” and unable to assist her attorney in a meaningful way. This court notes that defendant exhibited the same behavior and symptoms of mental incapacity during her interview by the Assistant District Attorney on the date of her arrest as she is described to have exhibited when examined by the court-appointed psychiatrists one month later. Indeed, that incapacity continued for several months, as she was not found fit to proceed to trial until seven months later after hospitalization in a mental facility where she was given psychotropic medication. As noted above, when initially asked by the Assistant District Attorney if she understood that she had the right to an attorney and to have an attorney present, defendant’s response was “whatever you say.” The evidence, therefore, shows that defendant was not mentally competent to assist an attorney in connection with the criminal charges even on the date of her arrest.
Accordingly, based on the evidence presented at the hearing on defendant’s motion to suppress, this court concludes that defendant was not mentally competent to waive her right to an attorney and submit to questioning by law enforcement authorities at the time of her arrest. Therefore, defendant’s motion to suppress her statements is granted.