*116 OPINION OF THE COURT
Jones, J.
The trial court erroneously denied defendant his constitutional rights to self-representation and to waiver of trial by jury.
The record discloses that this was a difficult case and that the Trial Judge exercised great patience and took great pains to protect the interests of defendant. We are obliged to conclude, however, that in so doing he deprived defendant of his constitutional right to make his own decision on these most significant procedural issues.
It may be inferred from the record that defendant was knowledgeable as to criminal trials in consequence of some prior contact with the criminal justice system.[1] In the present chapter, on November 29, 1973 he was indicted on two counts of robbery in the first degree, two counts of robbery in the second degree, four counts of grand larceny in the third degree, two counts of possession of a weapon and one count of petit larceny, all arising out of the armed robbery of an off-duty police officer at a bar in New York City in the early morning hours of September 24, 1973.
On January 21, 1974 an attorney from the Legal Aid Society was appointed to represent defendant. A pretrial identification hearing was held on April 24, 1974, following which the motion made on defendant’s behalf to suppress a lineup identification was denied. On May 15 the People answered ready for trial. On May 20 defendant made a motion for substitution of counsel, and three days later his first counsel was relieved and a second attorney was appointed to represent him. On June 26 the case was marked "final for trial”. The following day defendant sent a letter to the Calendar Judge complaining of his second attorney. In the period from June, 1974 to January 10, 1975 it appeared that on several occasions defendant refused to come to court and his case was repeatedly adjourned.
On January 10, 1975 defendant was forcibly brought to court against his will. At that time he was informed by the Calendar Judge that in the future he would not be compelled to come to court but that he would be permitted to do so *117 provided the court had assurances that he would behave himself in an orderly way. After the case was announced ready, defendant informed the court that he had filed a grievance against his then assigned counsel. The attorney stated that his own prior applications to be relieved because he could not communicate with defendant had been denied. An unsuccessful attempt was made to plea bargain and the case was marked ready.
On February 11 defendant and his second attorney appeared at Trial Term. Following the court’s disposition of several pretrial motions, the attorney informed the court that defendant wanted a nonjury trial. The court then engaged in an extended discussion with defendant as to the implications and consequences of a waiver of jury trial. Defendant assured the court that he understood the situation and still wished to waive a jury. The court then instructed defendant to discuss the question with his attorney. The attorney informed the court that he had already discussed the matter with defendant. There ensued a further attorney-client conference, following which defendant again assured the court that he desired a trial without a jury. The court then handed defendant waiver-of-jury-trial forms. Questioning by the court revealed that the attorney would not give defendant categorical advice as to whether he should waive a jury and that he took the position that the responsibility for this decision rested with defendant himself who had been through jury trials. In a somewhat extended colloquy the court endeavored unsuccessfully to persuade the attorney to change his position and to give his client categorical advice. When the attorney informed the court that he had advised his client not to waive a jury trial but that the final decision was the client’s to make, and it appeared that there was substance to the attorney’s statement that he could not communicate with the client, the court relieved him of the representation.
A week later, on February 18, defendant again appeared before the trial court. He was questioned by the court in the absence of any attorney, then a third attorney was queried in defendant’s absence and finally there was questioning by the court with both defendant and the third attorney present. Conflicting versions were advanced as to defendant’s readiness to co-operate with his counsel, and the attorney described the difficulty of representing defendant. The attorney stated that he opposed any waiver of jury trial. Defendant stated that he *118 did not want the attorney to represent him. Nevertheless the court assigned the third attorney to do so. At that point defendant stated to the court that he wanted to represent himself. In response the court advised him that he might make a formal application to represent himself and that such an application would be considered at the appropriate time.[2] After again counseling defendant as to the seriousness of the charge he faced, the court put the case over to February 20.
On February 20 the court discussed the situation with the third attorney in defendant’s absence. The latter reported the difficulties of representation and informed the court that defendant persisted in his desire to represent himself and to waive his right to a jury trial. The court then put the case over to February 24.
On the 24th defendant and the third attorney appeared before the court at which time defendant expressed his displeasure with the attorney. Following further explanations by the court of the situation he faced and colloquy as to a missing witness, defendant again restated his desire for a nonjury trial. In response to an inquiry from the court, defendant conceded that his third attorney had advised against a waiver of jury trial. The attorney confirmed that this had indeed been his advice. Defendant again explicitly stated that he wished to waive a trial by jury and expressed his readiness to sign a formal waiver form (CPL 320.10, subd 2). Thereupon, without allowing defendant to submit a written waiver, the court denied defendant’s application to waive trial by jury, and defendant left the courtroom. Jury selection began and was completed some three hours later.
At the opening of the trial on February 25 before the jury came in, defendant referred to the fact that he had previously made a motion to represent himself and then formally resubmitted the motion. The trial court summarily denied the motion with the statement that defendant had demonstrated a lack of capacity to represent himself. In the discussion which followed defendant reminded the court of its prior assurance that he could make an application to represent himself. When the court stated that defendant had demonstrated in his *119 appearances before the court that he was not "capable” or "qualified to represent” himself, defendant inquired whether his conduct had been disruptive. The court responded, "Your conduct has not been disruptive, although it has not been particularly respectful”, adding, "It is not on that basis that I am declining your application.”
Thereupon the case proceeded to trial with the third assigned attorney acting for defendant who was found guilty of robbery in the second degree and sentenced as a persistent felony offender to an indeterminate term of from 20 years to life imprisonment, the sentence to be consecutive to a prior indeterminate term of imprisonment from 12 Vi to 25 years on an unrelated Bronx County case. The Appellate Division affirmed, without opinion.
It can no longer be disputed that defendant had a constitutional right to waive trial by jury (NY Const, art I, § 2; People v Duchin, 12 NY2d 351; see People ex rel. Rohrlich v Follette, 20 NY2d 297; see, also, CPL 320.10) and a constitutional right to represent himself (Faretta v California, 422 US 806; People v McIntyre, 36 NY2d 10). In this case it appears that defendant was intelligent, articulate and knowledgeable of the criminal justice system, at least to a limited extent. His assertion of each right in advance of trial was timely and unequivocal. His repetitious, explicit reassertions of his rights at every opportunity, dispelled any possible misunderstanding of his intentions or of his good faith. Defendant’s lack of confidence in his assigned counsel and his failure to co-operate with them were consistent with his desire to represent himself. The court and assigned counsel took great care to explain the consequences both of a waiver of jury trial and of proceeding without counsel; both unmistakably advised against the positions defendant was taking. It cannot be said that defendant’s assertions of his constitutional rights were not made knowingly and understandingly, based on an intelligent, informed judgment.
Nor were defendant’s applications made for purposes of delay; at no time was there coupled with either application any request for an adjournment. Defendant never intimated any desire for a delay, and nothing in the record suggests that he was seeking by stratagem to procure an otherwise impermissible procedural advantage. No inference is available that in January and February, 1975 defendant’s applications were designed for purposes of obstruction; indeed the trial court *120 explicitly disclaimed any intention to base its denials of defendant’s applications on such ground.
To accept a defendant’s lack of knowledge of legal principles and rules of law or his unfamiliarity with courtroom procedures as the ground for concluding that he is not qualified to represent himself would in effect be to eviscerate the constitutional right of self-representation; such limitations could confidently be said to exist in nearly every criminal case in which the defendant had not received legal training. This, however, appears to have been the rationale for the court’s ruling in this case; nothing intimates that the trial court’s evaluation of this defendant as not capable or qualified to represent himself was because of any mental incompetence or illiteracy. (Cf. People v Reason, 37 NY2d 351.)
If the rights of self-representation and of waiver of jury trial were not to be honored on this record, it is unlikely that either ever would be. Examination of this record fails to suggest any further action or submission defendant might have taken or made in support of his right or intention to exercise his constitutional privileges. By similar token the same examination discloses that the trial court was wholly convinced that it would not be in the best interests of defendant either to waive a trial by jury or to represent himself rather than to be represented by counsel. The inference may be drawn that the trial court — unquestionably in furtherance of what it perceived to be defendant’s best interests — was determined to deny defendant’s applications no matter what he said or what the record otherwise showed. We conclude, however, that in its rulings the court assumed to itself authority and responsibility for determining that it would not be in defendant’s interest for him either to waive a jury trial or to represent himself. In so doing the court arrogated to itself and denied to defendant the exercise of rights constitutionally guaranteed to him.
Accordingly, the order of the Appellate Division should be reversed, defendant’s conviction vacated, and the case remitted for a new trial.
Chief Judge Cooke and Judges Jasen, Gabrielli, Wachtler, Fuchsberg and Meyer concur.
Order reversed, etc. *123 retests of IQ were administered only when recommended by teachers, in the exercise of their professional judgment, or when requested by parents. Also there is no basis for finding that a retest of IQ "within two years” would have yielded any different result. VI. In any event, there should be a dismissal since there is no evidence from which a jury could find that this particular plaintiff would have done better (or even as well) outside the protective setting of a CRMD class. (Alexander’s Dept. Stores v Ohrbach’s, Inc., 269 App Div 321; Becker v Schwartz, 46 NY2d 401; Steitz v Gifford, 280 NY 15.)

. The appeal is before us on an appendix. Even the single record filed in our court is incomplete. Accordingly, for significant portions of our recital of the procedural course of this case we have relied on the statement of facts in the People’s brief.

. The court then indicated that, if permission were given defendant to conduct his own defense, the court might ask the attorney to remain in the courtroom to be available if defendant wished to ask him any questions or to seek his advice. This procedural possibility was never pursued.