[6 NE3d 572, 983 NYS2d 454]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ALIAS STONE, Appellant.

Argued January 6, 2014; decided February 13, 2014

## POINTS OF COUNSEL

*Cravath, Swaine & Moore LLP,* New York City (*Leah Friedman* of counsel), and *Richard M. Greenberg, Office of the Appellate Defender* (*Joseph M. Nursey* of counsel), for appellant. I. The trial court erred in allowing Alias Stone, who exhibited evidence of mental illness, to proceed pro se without first determining whether he was mentally competent to stand trial and mentally competent to represent himself. (*People v Armlin,* 37 NY2d 167; *People v Smyth,* 3 NY2d 184; *People v Tortorici,* 92 NY2d 757; *Johnson v Keane,* 974 F Supp 225; *United States v Auen,* 846 F2d 872; *Smith v Rock,* 554 F Supp 2d 505; *People v Reason,* 37 NY2d 351; *People v Thomas,* 73 AD3d 1223; *Indiana v Edwards,* 554 US 164; *Dusky v United States,* 362 US 402.) II. In light of the Supreme Court's decision in *Indiana v Edwards* (554 US 164 [2008]), where a defendant who exhibits evidence of mental illness makes a request to proceed pro se, the trial court should determine whether the defendant is mentally competent to represent himself, even if that defendant is mentally competent to stand trial. (*People v Armlin,* 37 NY2d 167; *People v Smyth,* 3 NY2d 184; *People v Mendez,* 1 NY3d 15; *Dusky v United States,* 362 US 402; *Drope v Missouri,* 420 US 162; *McKaskle v Wiggins,* 465 US 168.)

*Cyrus R. Vance, Jr., District Attorney,* New York City (*Sheila O'Shea* and *Sylvia Wertheimer* of counsel), for respondent. The trial court was not obligated to sua sponte order a competency examination. (*Faretta v California,* 422 US 806; *Matter of Kathleen K. [Steven K.],* 17 NY3d 380; *People v McIntyre,* 36 NY2d 10; *People v Rosen,* 81 NY2d 237; *People v Ryan,* 82 NY2d 497;

*People v Smith*, 68 NY2d 737; *People v Davis*, 49 NY2d 114; *People v Arroyo*, 98 NY2d 101; *People v Reason*, 37 NY2d 351; *People v Crampe*, 17 NY3d 469.)

### OPINION OF THE COURT

GRAFFEO, J.

The primary issue presented in this case is whether defendant's constitutional rights were violated by the trial court's failure to sua sponte inquire into his mental capacity to represent himself prior to granting his application to proceed pro se.

Defendant was tried on two counts of burglary after he twice trespassed into secure areas of a Hilton Hotel, on one occasion stealing a cell phone. At his jury trial, defendant expressed distrust of his lawyer and asked to proceed pro se. He indicated that he believed that his attorney did not have his "best interest at heart" and wanted to sell him out. He said that he did not want to put his life in anyone else's hands but preferred instead to represent himself and do "the best I can on my own."

Over the course of two days, several lengthy colloquies ensued between the court, defendant and assigned counsel wherein the court repeatedly advised defendant of the perils of self-representation and attempted to persuade him to work with his assigned counsel. The case was adjourned to permit defendant to discuss the self-representation application with his attorney, who subsequently joined in defendant's request, explaining that there had been a breakdown in communication between him and his client and that defendant was "adamant" in his desire to proceed pro se. The court made one last attempt to convince defendant to permit defense counsel to continue his representation, to which defendant responded:

> "Again, your Honor, with all due respect to you, you can call it paranoia or whatever, this system, I don't trust attorneys, lawyers, DAs. You have given me leeway, I see that you have given me more leeway than any judge that I had before, but I am scared. I don't want this to be my final chapter."

Noting that it was evident that defendant was an intelligent man, although lacking in legal training, the court ultimately granted his request to represent himself.

With defendant's consent, the court directed that assigned counsel remain available to defendant throughout the proceedings as stand-by counsel. Defendant represented himself

through jury selection,* an opening statement and part of the cross-examination of the People's first witness. But he then advised the court that he was "nervous," and wanted stand-by counsel to take over the defense, ending the period of pro se representation.

Defendant was convicted of two counts of burglary but acquitted of possession of burglar's tools. Sentencing was adjourned several times for reasons not apparent from the record. In the meantime, about two months after the trial concluded, a social worker hired by the defense to evaluate defendant for sentencing purposes sent a letter to the court identifying several mitigating circumstances in defendant's past, indicating that defendant had "developed a guarded, distrustful stance against the world" and also suggesting defendant might be suffering from an undiagnosed mental health problem.

Nine months later, the People advised the court that defendant's family members reported that he had developed some "psychiatric issues," prompting the court to order a CPL 730.30 examination. When interviewed by psychiatric experts, defendant was found to be disoriented and downcast, and to be experiencing auditory hallucinations as well as "a complex delusional system about his food being poisoned in prison." He was diagnosed with psychotic disorder, not otherwise specified, or major depressive disorder with psychotic features, and determined not fit to proceed to sentencing. The court adopted the finding of incapacity in January 2010 but, after defendant was treated with medication, his condition improved and, in April 2010, he was determined to have recovered his competency.

In May 2010, defendant appeared for sentencing with the same assigned counsel. The People detailed defendant's 25-year-history of theft offenses, including seven prior felonies, asking the court to impose the maximum consecutive sentence of 15 years plus five years postrelease supervision. Defense counsel emphasized defendant's abusive childhood and the fact that his thefts arose from his crack addiction and were nonviolent, arguing that a sentence of concurrent terms of five years in prison, plus five years postrelease supervision was appropriate. Despite the period of incompetency, defense counsel expressed no concern about defendant's present mental capacity, nor was any

---

* At the time the pro se request was granted, voir dire was underway and four jurors had been selected. When defendant took over the defense, the trial court granted his motion for a mistrial, dismissed the sworn jurors and permitted him to commence voir dire anew.

issue raised concerning defendant's mental competency during the trial. Defendant himself gave a lengthy personal statement in which he articulately described the depredations of his childhood and criticized the criminal justice system for its "policy of incarceration," noting that he had spent much of his life in prison and had never received help transitioning to civilian life. The court sentenced defendant to a term of seven years in prison plus five years postrelease supervision for each count, the sentences to run concurrently.

On appeal to the Appellate Division, citing the Supreme Court's decision in *Indiana v Edwards* (554 US 164 [2008]), defendant argued for the first time that his constitutional right to counsel was violated when the trial court permitted him to proceed pro se without first having him examined to determine whether he met a "heightened" competency standard necessary for self-representation. The Appellate Division unanimously rejected this argument (98 AD3d 910 [2012]). First, the court distinguished *Edwards*, noting that there, unlike here, a state trial court had denied a criminal defendant's request to proceed pro se and the question was whether that denial violated his Sixth Amendment right to represent himself—an issue not presented here where defendant's pro se application was granted. Second, the First Department further concluded that the issue of whether the trial court abused its discretion in failing to assess defendant's mental competency prior to permitting him to proceed pro se was not presented because there was no indication during trial that defendant suffered from a mental disorder; rather, defendant's mental status deteriorated after the trial concluded, while he was awaiting sentencing.

A Judge of this Court granted defendant leave to appeal and we now affirm.

Since defendant contends that his application to proceed pro se should have been denied on mental competency grounds, this case arises at the intersection of several constitutional rights, beginning with the most basic—the Due Process requirement that a criminal defendant may not be prosecuted unless competent to stand trial under the standard articulated in *Dusky v United States* (362 US 402, 402 [1960] [defendant must possess "a rational as well as factual understanding of the proceedings" and have "sufficient present ability to consult with his (or her) lawyer with a reasonable degree of rational understanding"]; *see Drope v Missouri*, 420 US 162 [1975]). In New York, this baseline mental capacity standard has been codified at CPL

730.10 (1). The People must establish competency to stand trial by a preponderance of the evidence (*People v Mendez*, 1 NY3d 15, 19 [2003]). But the burden arises only when there is some basis to question defendant's mental capacity because the People are otherwise entitled to rely on the presumption that a defendant is competent to proceed (*People v Gelikkaya*, 84 NY2d 456 [1994]).

Also implicated is the Sixth Amendment right of a criminal defendant to self-representation at trial, recognized in *Faretta v California* (422 US 806 [1975]), and the corresponding—and sometimes competing—requirement that the state provide defendant competent counsel to conduct his or her defense. It is well-settled that an application to proceed pro se must be denied unless defendant effectuates a knowing, voluntary and intelligent waiver of the right to counsel (*id.* at 835; *People v McIntyre*, 36 NY2d 10, 17 [1974]). To this end, trial courts must conduct a "searching inquiry" to clarify that defendant understands the ramifications of such a decision (*see People v Providence*, 2 NY3d 579 [2004]).

Defendant argues that *Indiana v Edwards* (554 US 164) imposed a new constitutional mandate on the states in relation to resolution of *Faretta* requests. In *Edwards*, the Supreme Court held that the United States Constitution permits a state to deny a defendant's request to proceed pro se in cases where defendant suffers from a severe mental illness and, though sufficiently competent to stand trial, "lacks the mental capacity to conduct his trial defense unless represented" (*id.* at 174). The defendant in *Edwards* was caught stealing a pair of shoes from an Indiana department store and the confrontation resulted in a gunfight with store security officers in which defendant wounded a bystander. From the outset of the criminal prosecution, defendant's competency to stand trial was at issue. He was a diagnosed schizophrenic with delusional thinking and the trial court conducted three competency proceedings before finding him fit to proceed. On the eve of trial, defendant asked to represent himself but the court denied the request as untimely. When the jury deadlocked on some of the charges, necessitating a retrial, defendant renewed his request to proceed pro se. Referring to the lengthy record of psychiatric reports arising from the prior competency hearings, the trial court noted that defendant still suffered from schizophrenia and denied the application, finding that defendant was competent to stand trial but not sufficiently competent to represent himself.

On appeal, defendant contended that the trial court's denial of his request to proceed pro se violated his Sixth Amendment right to represent himself under *Faretta*, an argument that was reluctantly credited by the Indiana Supreme Court. But the United States Supreme Court disagreed, holding that it is constitutionally permissible for a state to impose a "mental-illness-related limitation on the scope of the self-representation right" (*Edwards*, 554 US at 171). The Court explained:

> "Mental illness itself is not a unitary concept. It varies in degree. It can vary over time. It interferes with an individual's functioning at different times in different ways . . . In certain instances an individual may well be able to satisfy *Dusky*'s mental competence standard, for he will be able to work with counsel at trial, yet at the same time he may be unable to carry out the basic tasks needed to present his own defense without the help of counsel" (*id*. at 175-176 [citations omitted]).

Thus, the Court concluded that a state may—without offending the Constitution—deny a minimally-competent defendant's request to proceed pro se based on a determination that, due to severe mental illness, he or she does not possess the competency for self-representation at trial.

Defendant submits that *Edwards* requires states to adopt a two-tiered competency standard—a baseline for competency to stand trial and a separate, heightened standard for competency to proceed pro se at trial—and compels a competency hearing before a defendant may be permitted to proceed pro se. But we do not view *Edwards* as imposing such a requirement—and our interpretation is in accord with the federal appellate courts that have addressed the issue (*see e.g. United States v Bernard*, 708 F3d 583 [4th Cir 2013], *cert denied* — US —, 134 S Ct 617 [2013]; *United States v Turner*, 644 F3d 713 [8th Cir 2011]; *United States v Berry*, 565 F3d 385 [7th Cir 2009]). Although a court has discretion to require representation by counsel in certain circumstances despite a request to proceed pro se, it does not follow that the Constitution is offended if that discretion is not exercised.

Nor did *Edwards* effectuate a substantial change in the law, at least not in New York. Prior to *Edwards*, the Supreme Court had never held that a state was precluded from assessing a defendant's mental capacity when adjudicating a *Faretta* request. And we have long recognized that a mentally-ill defendant,

though competent to stand trial, may not have the capacity to appreciate the demands attendant to self-representation, resulting in an inability to knowingly, voluntarily and intelligently waive the right to counsel and proceed pro se (*People v Reason*, 37 NY2d 351 [1975]). When there is a basis to question defendant's mental capacity, we indicated that the trial court should consider that question as part of the "searching inquiry" designed to determine the efficacy of defendant's waiver of counsel. To be sure, we did not characterize this as a distinct "competency inquiry," declining to define "separate and distinct levels of mental capacity" (*id*. at 353). But we went on to explain:

> "By such rejection, however, we do not intend to suggest that mental capability of the defendant at the time of waiver is irrelevant. Quite the contrary. As in other instances of waiver, the determination that it was intelligent and voluntary, and thus legally effective, may well turn, even in major part, on the mental capability of the defendant at the time in the circumstances" (*id*. at 354).

Hence, under New York law a defendant's mental capacity may be taken into account in the *Faretta* context, although the trial court need not conduct a formal "competency" hearing prior to adjudicating a self-representation request.

Viewed as a whole, our analysis in *Reason* is compatible with *Edwards* where the Supreme Court held that it was permissible for the trial court to deny the severely-mentally-ill defendant's request to proceed pro se, even though no distinct "self-representation competency" inquiry had been conducted. Consistent with *Edwards*, New York courts can, in appropriate circumstances, deny a self-representation request if a severely-mentally-ill defendant who is competent to stand trial otherwise lacks the mental capacity to waive counsel and proceed pro se.

The inquiry then becomes whether the trial court in this case abused its discretion in declining to exercise that prerogative. Defendant maintains that it did, contending that defendant exhibited signs of severe mental illness during the trial which should have alerted the court to sua sponte assess his capacity for self-representation. But the Appellate Division disagreed and that determination is supported by the record.

Indeed, the situation presented in this case is significantly different from either *Edwards* or *Reason*. In each of those cases,

the trial court was aware at the time of the *Faretta* request that defendant suffered from a serious mental illness since issues had been raised concerning defendant's competency to stand trial, spawning multiple competency proceedings. In contrast, here, when defendant expressed a desire to represent himself, the trial court had no reason to question his mental health, much less a basis to believe that defendant suffered from an illness severe enough to impact his ability to waive counsel and proceed pro se. It is true that a competency issue arose while defendant was awaiting sentencing—but nothing in his extensive interaction with the trial court suggested defendant's mental capacity was compromised during the trial. And as we have already held, the fact that a defendant later develops competency issues is not, without more, a basis to question his mental capacity at a prior time during the criminal proceeding (*see Gelikkaya*, 84 NY2d at 460).

As an indication that he was suffering from delusions or other indicia of mental impairment, defendant points to the "paranoia" he expressed during the *Faretta* inquiry, noting that he repeatedly expressed his distrust of his attorney and that he believed conviction was inevitable. However, these statements cannot fairly be described as "red flags" that should have put the court on notice of a severe mental illness since defendants who wish to proceed pro se often express similar views. As we explained in *People v McIntyre*, "[f]requently, the *pro se* defendant is motivated by dissatisfaction with the trial strategy of defense counsel or a lack of confidence in his attorney" (36 NY2d at 16 [citations omitted])—concerns not unlike those articulated here. Given that the 45-year-old defendant had numerous prior convictions, the trial court undoubtedly interpreted his negative opinion of his attorney and the criminal justice system as a regrettable by-product of his personal experience as opposed to a signal that he suffered from a mental illness. It appears that defense counsel also viewed the comments in this light since, far from raising an issue concerning defendant's capacity for self-representation, counsel supported defendant's request to proceed pro se.

We are also unpersuaded that the fact that defendant at times engaged in obstreperous conduct or emotional outbursts during the trial should have alerted the court to a competency problem since disruptive behavior of this nature by a criminal defendant is commonplace and not necessarily indicative of mental impairment (*see e.g. People v Johnson*, 204 AD2d 188 [1st Dept 1994],

*lv denied* 83 NY2d 968 [1994]; *People v Rosebrough*, 199 AD2d 1024 [4th Dept 1993], *lv denied* 83 NY2d 857 [1994]). Nor can such a condition be inferred from various missteps defendant purportedly made during the brief period of self-representation. To the extent defendant's representation may have been inartful—and, in many respects, it was as capable as could be expected from a pro se defendant—there is no basis to interpret it as evidence of a serious mental illness rather than the lack of skill typical of a layperson untrained in trial tactics or procedure.

On this record, it cannot be said that the trial court abused its discretion in failing to undertake a particularized assessment of defendant's mental capacity when resolving defendant's request to proceed pro se. And since no claim is (or could be) made here that the court's "searching inquiry" was otherwise deficient, there is no basis to disturb the conviction on *Faretta* grounds. Defendant's related argument that the trial court should have ordered a CPL 730.30 examination to assess whether defendant possessed the baseline mental competency to stand trial has likewise been considered and determined to be without merit.

Accordingly, the order of the Appellate Division should be affirmed.

Chief Judge LIPPMAN and Judges READ, SMITH, PIGOTT and RIVERA concur; Judge ABDUS-SALAAM taking no part.

Order affirmed.