■ The People of the State of New York, Respondent, v Rakim Paulin, Appellant. [33 NYS3d 459]—

Appeal by the defendant from a judgment of the County Court, Dutchess County (Greller, J.), rendered June 29, 2011, convicting him of criminal sale of a controlled substance in the third degree (five counts), criminal possession of a controlled substance in the third degree (seven counts), and criminal possession of a controlled substance in the fifth degree, upon a jury verdict, and imposing sentence.

Ordered that the judgment is reversed, on the law, and a new trial is ordered.

During pretrial proceedings, the defendant unsuccessfully

moved to relieve his counsel. Shortly thereafter, at the outset of a pretrial hearing pursuant to *People v Rodriguez* (79 NY2d 445 [1992]), the defendant made his first of three timely applications to proceed pro se. As he did so, he referred to the recent denial of his motion to relieve his counsel, and the County Court made clear that his counsel would be his "last attorney." When the court asked the defendant why he wanted to represent himself, he explained that his counsel failed to challenge a search warrant and failed to take up a "number of issues" that the defendant wanted to raise. At that point, defense counsel went on record stating that, in his view, there was no good faith basis upon which to challenge the search warrant, the legal arguments raised by the defendant were not relevant, and his client was like a "broken record" and was asking him "to do certain things that [he didn't] agree with." The court then asked the defendant questions to determine whether he was knowingly and intelligently waiving his right to counsel and whether his request to proceed pro se was unequivocal. The court also questioned the defendant about his level of education and tested his knowledge of the law. Although the defendant's desire to represent himself was unequivocal, the court denied his application, in part because the defendant was admittedly not prepared to proceed that day with the *Rodriguez* hearing. The court also made clear, however, that the defendant could renew his application prior to trial.

Four months later, before a different Judge and at the outset of a pretrial hearing pursuant to *People v Sandoval* (34 NY2d 371 [1974]), defense counsel moved to be relieved. The motion was denied. The defendant then renewed his application to proceed pro se. The County Court summarily denied the application, relying on the questioning of the defendant by the prior Judge. At that point, defense counsel explained that he and the defendant were "very much at odds over the strategy" and indicated that he "[did] not want to act as an agent for [the defendant's] witness tampering." When the defendant vigorously objected to his own counsel's use of the term "witness tampering," defense counsel told him to "shut [his] mouth for a minute" and implored the court to let the defendant represent himself, adding that he should not "be held here prisoner for this garbage." The court refused to either relieve defense counsel or allow the defendant to proceed pro se.

Finally, just before the start of jury selection, defense counsel once again renewed the defendant's application to represent himself. The County Court reiterated that it was relying on the prior Judge's searching inquiry and conclusion that the defend-

ant was unable to represent himself, which the court had "no reason to upset."

"A defendant in a criminal case may invoke the right to defend *pro se* provided: (1) the request is unequivocal and timely asserted, (2) there has been a knowing and intelligent waiver of the right to counsel, and (3) the defendant has not engaged in conduct which would prevent the fair and orderly exposition of the issues" (*People v McIntyre*, 36 NY2d 10, 17 [1974]; *see People v Smith*, 68 NY2d 737, 738 [1986]).

Here, the defendant made three timely applications to proceed pro se. Contrary to the People's contention, the fact that these applications were accompanied by unsuccessful requests for new counsel did not, under the circumstances, render the applications equivocal (*see People v Malone*, 119 AD3d 1352, 1354 [2014]; *People v Lewis*, 114 AD3d 402, 404 [2014]; *cf. People v Gillian*, 8 NY3d 85 [2006]). Rather, the defendant's repetitious, explicit reassertions of his right at every opportunity served to dispel any possible misunderstanding of his intentions or of his sincerity in desiring to represent himself (*see People v Davis*, 49 NY2d 114, 119 [1979]).

As to the second requirement that the defendant's waiver of counsel be knowing and intelligent, the record shows that the County Court's precautionary inquiry and warnings to the defendant regarding the perils of representing himself and the value of legal representation were sufficient to impress upon him the dangers and disadvantages of giving up the fundamental right to counsel (*see Faretta v California*, 422 US 806, 835 [1975]; *People v White*, 56 NY2d 110, 117 [1982]; *People v Powe*, 234 AD2d 397, 397 [1996]).

To the extent that the County Court based its denial of the defendant's application on the ground that he had a history of mental illness, this was error. "New York courts can, in appropriate circumstances, deny a self-representation request if a severely-mentally-ill defendant who is competent to stand trial otherwise lacks the mental capacity to waive counsel and proceed pro se" (*People v Stone*, 22 NY3d 520, 527 [2014]). This is not such a case. While the defendant acknowledged prior hospitalizations for mental illness, there is no indication in the record that the defendant was severely mentally ill at the time he made his requests to proceed pro se, or that any mental condition at that time rendered him incapable of intelligently and voluntarily waiving his right to counsel and representing himself.

To the extent that the County Court based its denial of the defendant's application on his failure to correctly answer the

prior Judge's questions about certain legal terms, the Court of Appeals has pointed out that "[t]o accept a defendant's lack of knowledge of legal principles and rules of law or his unfamiliarity with courtroom procedures as the ground for concluding that he is not qualified to represent himself would in effect be to eviscerate the constitutional right of self-representation; such limitations could confidently be said to exist in nearly every criminal case in which the defendant had not received legal training" (*People v Davis*, 49 NY2d at 120; *see People v McIntyre*, 36 NY2d at 17-18). In fact, the defendant informed the court that he had represented himself twice before in civil matters, attended a legal research class provided by the Department of Corrections, worked in a prison law library, and obtained a certificate in legal research and basic law library management. Under such circumstances, "[t]he inference may be drawn that the trial court—unquestionably in furtherance of what it perceived to be defendant's best interests—was determined to deny defendant's applications no matter what he said or what the record otherwise showed" (*People v Davis*, 49 NY2d at 120).

With regard to the third and final prong of the *McIntyre* test, there is no indication in the record that the defendant's overall conduct was disruptive, obstreperous, or "calculated to undermine, upset or unreasonably delay the progress of the trial" (*People v McIntyre*, 36 NY2d at 18; *see People v Schoolfield*, 196 AD2d 111, 117 [1994]).

What is perhaps most troubling about this record is that the County Court would neither agree to relieve defense counsel, even after he took positions that were plainly adverse to his client (*see People v Mitchell*, 21 NY3d 964, 966 [2013]), nor permit the defendant to proceed pro se, despite his timely and unequivocal requests to do so. This placed the defendant in an untenable position.

Since the denial of the right of self-representation is not subject to harmless error analysis (*see People v LaValle*, 3 NY3d 88, 106 [2004]), the judgment must be reversed and a new trial ordered (*see People v Forney*, 303 AD2d 763 [2003]; *People v Tejada*, 289 AD2d 516 [2001]).

We note that the People correctly concede on appeal that the terms of the defendant's postrelease supervision were illegal. The range of postrelease supervision permitted upon conviction, as a second felony drug offender with a prior violent felony conviction, is $1^1/_2$ to 3 years (*see* Penal Law §§ 70.70 [1] [b]; [4] [b] [i]; 70.45 [2] [d]), whereas here, the County Court imposed terms of five years.

The defendant's remaining contentions, including those raised in his pro se supplemental brief, are without merit. Chambers, J.P., Hall, Austin and LaSalle, JJ., concur.