People v Zi (2019 NY Slip Op 09353)





People v Zi


2019 NY Slip Op 09353


Decided on December 26, 2019


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on December 26, 2019

Renwick, J.P., Gische, Tom, Gesmer, Moulton, JJ.


10167 1932/15

[*1] The People of the State of New York, Respondent,
v
John Kojo Zi, Defendant-Appellant.


Robert S. Dean, Center for Appellate Litigation, New York (Scott H. Henney of counsel), for appellant.
Cyrus R. Vance, Jr., District Attorney, New York (Luis Morales of counsel), for respondent.



Judgment, Supreme Court, New York County (Laura A. Ward, J.), rendered September 6, 2017, convicting defendant, after a jury trial, of offering a false instrument for filing in the first degree (six counts), grand larceny in the first degree (four counts), scheme to defraud in the first degree, forgery in the second degree, making an apparently sworn false statement in the first degree and grand larceny in the second degree, and sentencing him to an aggregate term of 4 to 12 years, reversed, on the law, and the matter remanded for a new trial.
Under the facts of this case, the trial court improperly granted defendant's request to proceed pro se without first conducting a searching inquiry regarding defendant's mental capacity to waive counsel (see People v Stone, 22 NY3d 520 [2014]). A defendant's request to proceed pro se must be denied unless the defendant effectuates a knowing, voluntary and intelligent waiver of the right to counsel (People v Crampe, 17 NY3d 469, 481 [2011], cert denied sub nom. New York v Wingate, 565 US 1261 [2012]). In assessing the efficacy of the defendant's waiver, a trial court must undertake a "searching inquiry" to determine whether the defendant understands the dangers and disadvantages of proceeding without counsel (id.). It is within the trial court's discretion to determine whether its searching inquiry should include questioning about a defendant's mental capacity to waive counsel (Stone, 22 NY3d at 529; People v Hilser, 158 AD3d 819, 820 [2d Dept 2018] lv denied 31 NY3d 1083 [2018]). Where there are "red flags" that a defendant may be suffering from a serious mental illness affecting his or her competency to waive counsel, the searching inquiry should include a particularized assessment of defendant's mental capacity (Stone, 22 NY3d at 528). A court reviewing the trial court's determination looks at the entire record developed by the time the inquiry is made (People v Providence, 2 NY3d 579, 583 [2004]; People v Hisler, 158 AD3d at 820; see People v Cruz, 131 AD3d 724, 726-727 [2d Dept 2015], lv denied 26 NY3d 1087 [2015]).
We recognize that any determination regarding whether "red flags" exist is necessarily fact driven. Nonetheless, case law provides guidance for making that determination. As the Court of Appeals stated in Stone, "[W]e have long recognized that a mentally-ill defendant, though competent to stand trial, may not have the capacity to appreciate the demands attendant to self-representation, resulting in an inability to knowingly, voluntarily and intelligently waive the right to counsel and proceed pro se" (22 NY3d at 526-27). The Court of Appeals has also made it clear that a trial court need not order a CPL Article 730 exam to determine that a defendant has mental capacity to waive counsel (id. at 527). Even so, information obtained from CPL Article 730 exams that have otherwise been previously ordered by the court may bear upon the issue of waiver capacity (People v Fleming, 141 AD3d 408, 409 [1st Dept 2016] [given defendant's history of mental illness, court providently exercised its discretion in ordering a new CPL Article 730 proceeding to ensure that any waiver of the right to counsel would be knowing] lv denied 28 NY3d 1027 [2016]; People v Malone, 119 AD3d 1352, 1354 [4th Dept 2014] [CPL Article 730 exam finding defendant mentally competent "weighs in favor of our conclusion that defendant [*2]knowingly, voluntarily and intelligently waived his right to counsel"] lv denied 24 NY3d 1003 [2014]). A CPL Article 730 exam finding a defendant fit to proceed, however, is not determinative on the issue of waiver of counsel and does not, in itself, foreclose an enhanced searching inquiry (Stone, 22 NY3d at 527; People v Brodeur, 55 Misc 3d 37, 40 [App Term, 2d Dept, 2d, 11th, & 13th Jud Dists 2017]). Thus, in determining whether a basis for inquiry exists, a trial court should consider the information in the record from any prior CPL Article 730 exam, even if a defendant is fit to stand trial.
It also stands to reason that the threshold for determining that a basis exists for inquiry about a defendant's mental capacity to waive counsel is broader than the standard applied to the ultimate determination about whether a defendant actually has capacity to do so (See People v Johnson, 128 AD3d 412, 413 [1st Dept 2015] [following a determination that the defendant was fit to stand trial, the court still inquired into whether defendant's mental condition would affect his right to waive counsel based upon his history of violent behavior, but then permitted him to represent himself] lv denied 27 NY3d 999 [2016]). This is because the particularized inquiry is only a tool to assist the court in obtaining information to determine that a defendant seeking to exercise a constitutional right to self-representation actually has the capacity to waive counsel (Stone, 22 NY3d at 525). Red flags only serve to trigger an inquiry; the information elicited aids the court in reaching its ultimate conclusion on defendant's ability to waive counsel. Red flags by themselves do not foreclose a determination that defendant has that ability.
Not every indication of a defendant's mental infirmity mandates inquiry. Expressions of paranoia or distrust of an attorney, common for many defendants, are not red flags (Stone, 22 NY3d at 528). Nor is a defendant's belief that he or she was framed by police (Cruz, 131 AD3d at 727). A psychiatric history in itself may not be enough (People v Moore, 126 AD3d 561 [1st Dept 2015] lv denied 26 NY3d 1090 [2015]). On the other hand, notwithstanding a CPL Article 730 exam finding defendant fit, court observations that a defendant was irrational and had a tendency to "fly off the handle" warranted a searching inquiry into defendant's mental capacity (Boudeur, 55 Misc 3d at 40). So too, inquiry was warranted where defendant was observed by the court to be unruly, volatile and physically menacing (Johnson, 128 AD3d at 413). In many cases, whether or not the behavior would trigger an inquiry may be a question of degree.
Here, the record establishes that before defendant's application to proceed pro se was considered by the court, his third court-appointed attorney requested, of a prior judge, an order for a CPL Article 730 examination. The attorney reported to the examining psychiatrists that defendant believed he committed no crime, and that he faced prosecution as the result of "a Jewish conspiracy led by the Court and ISIS." Although defendant was found by both psychiatrists to be fit for trial, there were red flags in both reports suggesting the need for further inquiry. Both psychiatrists reported that defendant spoke about warrants being forged. One psychiatrist observed that some of defendant's assertions "impressed as potentially delusional," but that they were not a result of "psychotic delusions." The examiner expressly questioned whether defendant's beliefs about forged warrants and also the resignation of the arresting officer were delusional in nature. The examiner explained, however, that he could not conclude whether defendant's beliefs were delusional because he had no evidence to challenge the beliefs. Notwithstanding his conclusions, the examiner stated that "should further information become available . . . which suggests that some of [defendant's] beliefs are false and unyielding," his competency should be reassessed. The second psychiatrist described defendant's speech in part as "tangential and verbose." He also described defendant's assessment of the merits of winning his own case as "unrealistic but irrational."
Defendant appeared for trial before a justice who was presiding over the case for the first time. Defense counsel informed the court that defendant wished to proceed pro se. Neither defense counsel nor the prosecution made the court aware of defendant's CPL Article 730 exams or the potential for him to be experiencing delusional thoughts. Although the trial court conducted an extensive colloquy with defendant regarding the waiver of the right to counsel, at no point did the court inquire into defendant's mental health. We find that, notwithstanding other aspects of the record supporting defendant's capacity, the information in the CPL Article 730 reports indicating a potential for delusional thought was a red flag that required a [*3]particularized assessment of defendant's mental capacity before resolving his request to proceed pro se (see generally People v Stone, supra). Consequently, defendant's waiver of the right to counsel, made without such inquiry, cannot be deemed to have been knowing, voluntary, and intelligent.
Because we grant a new trial, we find no need to address defendant's remaining arguments.
All concur except Tom, J.
who dissents in a memorandum as follows:




TOM, J. (dissenting)


Because I conclude on the basis of the record that defendant has failed to establish that he lacked the mental competency to waive his right to representation by counsel at trial, and because the judgment otherwise was sound and should be affirmed, I respectfully dissent.
The right to self-representation should not be lightly disregarded by a court (Indiana v Edwards, 554 US 164 [2008]; Faretta v California, 422 US 806 [1975]), and a defendant is presumed to be competent to proceed absent a basis to question his or her competence (People v Gelikkaya, 84 NY2d 456 [1994]), although a defendant's decision to forego representation by counsel will depend on the defendant's waiver of such right to be knowing, voluntary and intelligent (People v Stone, 22 NY3d 520 [2014]; cf., People v Arroyo, 98 NY2d 101 [2002]).
"Intelligent" as used in this context refers to cognitive capacity and should not be construed to require that the waiver decision must be a wise one. A defendant's choice may be rash but a "criminal defendant is entitled to be master of his own fate" (People v Vivenzio, 62 NY2d 775, 776 [1984]), and even "where the accused is harming himself by insisting on conducting his own defense[,] . . . he [should] be allowed to go to jail under his own banner if he so desires and makes the choice with eyes open'" (United States ex rel. Maldonado v Denno, 348 F2d 12, 15 [2d Cir 1965]).
The Court of Appeals in Stone discusses a defective waiver in terms of the defendant suffering from a severe mental illness. The purportedly paranoid comments in that case by the defendant were not red flags that should have put the court on notice that the defendant might be suffering from a severe mental illness. Our own review of the record in Stone (98 AD3d 910 [1st Dept 2012]), affirmed by the Court of Appeals, found no manifest signs of mental illness at the time of trial warranting a further inquiry by the trial court, and we even characterized the defendant's opening statement as cogent and appropriate. There is no discernable difference between the setting in Stone and that which we are now reviewing. The present defendant engaged in an extensive colloquy with the court addressing the wisdom of his decision to proceed pro se. Defendant concluded that as a real estate practitioner he was better positioned to defend against these charges than a lawyer not experienced in real estate. While unwise, defendant's reasoning, as manifested in the colloquy, was not irrational. In fact, no aspect of that proceeding can reasonably be characterized as a red flag signaling any severe mental illness by defendant.
This particular defendant, in any event, seems to have been reasonably intelligent as is evidenced by the colloquy conducted by the court, a factor upon which the Stone decision also relied. Moreover, the logical character of his mind seems apparent in the intricate nature of the real estate frauds that he was accused of perpetrating. The fact that defendant engaged in a complex scheme to steal five residential properties located on the Upper West Side and in Harlem by filing forged deeds with the New York City Department of Finance's Automatic City Register Information System, and illegally transferring the properties from their owner to defendant's corporate entities, certainly is relevant to our review. This is not a person lacking in cognitive sophistication. He had some peculiar beliefs about how he was ensnared in the prosecution. While one might reasonably reject the soundness of some of those beliefs out of hand, that does not compel a conclusion that the defendant had an unsound mental acuity such that he was cognitively incapable of understanding the right he was waiving or the possible consequences of the waiver. This setting and my conclusion also comport with the analytical approach prescribed by the Court of Appeals in Stone. Defendant acknowledged repeatedly under [*4]questioning by the court that he understood the pitfalls of self-representation, as they were adequately described to him. Nor, for these reasons, can the volitional character of the waiver be gainsaid on the basis of this record.
Since the majority does not identify any actual red flags arising out of the actual waiver proceeding, it falls back on the existence of an earlier CPL 730 report. However, the mere existence of a prior 730 report should not itself be deemed to signal the requisite severe mental illness, nor do I agree with the majority's conclusion that, seemingly as a matter of law, it would nevertheless warrant an additional inquiry into the speculative possibility that there might - or even might not - exist the degree of mental instability necessary to vitiate a waiver of representation by counsel. Tangential comments by the prior examining psychiatrists as to what might someday occur, or that future delusional thinking by defendant might warrant a re-examination, should have no bearing on how defendant presented himself to the court at the time of the waiver and on how the court perceived defendant.
Moreover, since the court allowed defense counsel to assist defendant during trial as a legal advisor, concerns over the consequences of his waiver are even further reduced (People v Collins, 77 AD3d 404 [1st Dept 2010], lv denied 16 NY3d 797 [2011]).
The majority draws a distinction between a defendant's capacity to waive his right to counsel in opting to proceed pro se and his fitness to stand trial. The majority then proposes that the former evaluation is subject to a heightened standard - that the threshold for requiring an inquiry into his mental capacity to waive representation by counsel is broader, warranting a particularized assessment at the time of the waiver, than that necessary for evaluating whether he can stand trial. In fact, the Court of Appeals in Stone actually rejected such a categorical approach and declined to define separate and distinct levels of mental capacity. This Court, in People v Schoolfield (196 AD2d 111 [1st Dept 1994] lv dismissed 83 NY2d 858 [1994]), in emphasizing the constitutional primacy of a defendant's right to self-representation, has also rejected this as a false equivalence. The Schoolfield trial judge had concluded that "the standard of competency for waiving counsel and appearing pro se is a much higher standard than competence to stand trial," (id. at 114) then found the defendant competent to stand trial but not competent to proceed pro se. In reversing, we found no distinction in the mental capacity tests to be applied to a defendant's waiver, and to his capacity to stand trial.
In Stone, our decision characterized as "exceptional" (98 AD3d at 911) an occasion where a defendant might be competent to stand trial but not competent to waive the right to representation by counsel. The Court of Appeals acknowledged that a mentally ill defendant might be able to stand trial but might not be competent to understand the waiver but, agreeing with our analysis, found no basis to reject the manner in which the trial judge proceeded. Nor, the court held, is it necessary for a trial judge to undertake a particularized assessment of a defendant's mental capacity regarding the defendant's self-representation or to sua sponte order a CPL 730 hearing when, at the time of the waiver, the defendant does not exhibit mental illness.
The issue in the consolidated appeal in People v Crampe (17 NY3d 469 [2011], cert denied sub nom. New York v Wingate, 565 US 1261 [2012]), cited by the majority, arose from the adequacy of the respective courts' advisements at different stages of those proceedings regarding the perils of self-representation rather than from a concern about those defendants' mental states. The Court of Appeals noted the absence of "any rigid formula[,] and [it] endorsed the use of a non-formalistic, flexible inquiry" (id. at 482). The majority herein raises no such concerns. The majority notes that expressions of paranoia, or that police or other outside forces framed the defendant, are not red flags, a conclusion which I join. Rather, the majority faults the trial court for not pursuing some contingent and, at that time, speculative comments in the CPL 730 examination report regarding some of the defendant's beliefs.
As I read the record, including the extensive observations of the examining psychiatrists, I find the absence of red flags telling. Defendant might have manifested odd conclusions about how he ended up in the court system and about his case, but the examining psychiatrists noted his education level, business background and proficiency in English, and that the general tenor of his staments and responses was not irrational and that he was adequately cognizant about the court proceedings even if he lacked sufficient knowledge to understand the timing of discovery and the [*5]like. The fact that the court did not delve deeper into references contained in the CPL 730 examination report that defendant had strange and potentially delusional beliefs about some things did not compromise either the court's inquiry or its conclusions.
As the test is articulated by Stone, there was no present manifestation of a severe mental illness operating on the defendant's cognitive capacities such as would override the validity of his waiver at the time that the waiver was executed. Moreover, here there is not even the later manifestation of mental illness that arose in Stone, which still did not render defective the manner in which that trial court had proceeded. Nor, if the majority's perspective is followed to its logical conclusion, would the spare and unelaborated references by the examining psychiatrists, who actually found no present mental illness, have been a constitutionally defensible basis to deny defendant the right of self-representation upon which he insisted.
It also is telling that defendant, who seems to have been well educated in his native Ghana, experienced in business, and proficient in the English language, has not challenged the findings of competency by the examining psychiatrists. Nor did the examining psychiatrists find that he was delusional in a manner bearing on his ability to competently waive his right to representation by counsel.
In conclusion, contrary to the characterization by the majority, the 730 examination report did not establish that the defendant was mentally ill; it simply noted the peculiarity of some of his beliefs that in the future or under different circumstances might possibly cross the threshold of delusional thinking in those regards. This record does not support a conclusion that the court failed to ascertain whether the defendant "suffered from an illness severe enough to impact his
ability to waive counsel and proceed pro se" (People v Stone, supra, at 528). Hence, I conclude that there is no sound basis to reverse this judgment and to order a new trial.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: DECEMBER 26, 2019
CLERK